JOHN KINDL, TEMPORARY ADMINISTRATOR
(ESTATE OF RAYMOND PAGNI) *v.*
DEPARTMENT OF SOCIAL
SERVICES
(AC 21918)

Lavery, C. J., and Bishop and Peters, Js.

Argued February 15—officially released May 7, 2002

*Thomas J. Riley*, with whom was *Shawn L. Rutchick*, legal intern, for the appellant (plaintiff).

*Patrick B. Kwanashie*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellee (defendant).

*Opinion*

PETERS, J. The right to take an appeal from the decision of an administrative agency is purely statutory. General Statutes § 4-183 (c) specifies the manner in which, to take an appeal, an administrative appellant must serve process on the agency in question. In the absence of proper service of process, the Superior

Court must dismiss the appeal because it lacks subject matter jurisdiction. Practice Book § 10-33. The only issue in this case is whether there are any circumstances under which an administrative appeal can go forward despite partial noncompliance with the statute. The issue arises in the context of service of process by someone who had no statutory authority to do so. Unlike the trial court, we conclude that this defect in the service of process did not deprive the trial court of subject matter jurisdiction. Accordingly, we reverse the judgment and remand the case for further proceedings.

The plaintiff, John Kindl, is the temporary administrator of the estate of Raymond Pagni. He sought to appeal from a decision of the defendant department of social services that had turned down his request for reimbursement of certain medical expenses incurred by Pagni.

The defendant responded to the plaintiff's appeal on its merits. Because it filed no motion to dismiss, it waived any claim of lack of personal jurisdiction. See Practice Book § 10-32; *Pitchell* v. *Hartford*, 247 Conn. 422, 433, 722 A.2d 797 (1999); *Knipple* v. *Viking Communications, Ltd.*, 236 Conn. 602, 605, 674 A.2d 426 (1996); *Brunswick* v. *Inland Wetlands Commission*, 222 Conn. 541, 550–51, 610 A.2d 1260 (1992); *United States Trust Co.* v. *Bohart*, 197 Conn. 34, 39, 495 A.2d 1034 (1985).

The defendant's failure to file a motion to dismiss was not, however, a waiver of a claim of lack of subject matter jurisdiction. That claim properly may be raised at any time by the parties or by the court. Practice Book § 10-33; *Daley* v. *Hartford*, 215 Conn. 14, 27–28, 574 A.2d 194, cert. denied, 498 U.S. 982, 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990). "[W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case . . . ." (Internal quotation marks omitted.) *Zoning*

*Commission* v. *Fairfield Resources Management, Inc.*
41 Conn. App. 89, 103, 674 A.2d 1335 (1996), citing
*Concerned Citizens of Sterling* v. *Sterling,* 204 Conn.
551, 557, 529 A.2d 666 (1987). In this case, the trial
court, sua sponte, raised the question of subject mat-
ter jurisdiction.

The court concluded that it lacked subject matter
jurisdiction because § 4-183 (c) requires service of pro-
cess to be made either by a "proper officer" or by an
"indifferent person." It is undisputed that, in this case,
service on the defendant was made by an employee in
the office of the plaintiff's counsel. The employee was
neither a "proper officer" nor an "indifferent person."
It is equally undisputed that, in every other respect,
service met the requirements of the statute. The defen-
dant received proper appeal papers within the time
specified by the statute. The defendant has not claimed
that it was prejudiced by the fact that process was
served by someone who was not an "indifferent
person."

The court held that § 4-183 (c) should be construed
strictly so that any deviation from the statutory require-
ments for an administrative appeal automatically
deprived the court of subject matter jurisdiction to hear
the appeal. In effect, the court equated the failure to
serve process by an "indifferent person" with a failure
to serve process at all.

In his appeal to this court, the plaintiff challenges
the validity of the trial court's strict construction of § 4-
183 (c). Because a question of statutory construction
raises an issue of law, our review is plenary. See, e.g.,
*State* v. *Russo,* 259 Conn. 436, 447, 790 A.2d 1132 (2002);
*Davis* v. *Norwich,* 232 Conn. 311, 317, 654 A.2d 1221
(1995); *Masko* v. *Wallingford,* 67 Conn. App. 276, 280,
786 A.2d 1209 (2001).

The scope of our plenary review is governed by well established principles. "[I]t is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 403, 780 A.2d 903 (2001); *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 26, 717 A.2d 77 (1998). In undertaking that plenary review in this case, we are mindful of the principle that legislation is to be construed in light of a strong presumption in favor of jurisdiction. See, e.g., *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 266, 777 A.2d 645 (2001); *Banks* v. *Thomas*, 241 Conn. 569, 582–83, 698 A.2d 268 (1997); *Olympia Mortgage Corp.* v. *Klein*, 61 Conn. App. 305, 307, 763 A.2d 1055 (2001).

In his argument for reversal, the plaintiff contends that the trial court's construction of § 4-183 (c) was improper because it ran counter to the policy behind the statute as that policy has been interpreted by our Supreme Court. The defendant argues, to the contrary, that numerous Connecticut precedents have adopted a strict construction of § 4-183 (c). Such a construction is especially appropriate, in its view, because the use of the word "shall" demonstrates the intent of the legislature that compliance with each of the stated requirements for service of process is mandatory. We agree with the plaintiff.

## STATUTORY TEXT

Construction of a statute starts with an examination of the statutory text. In relevant part, § 4-183 (c)

describes service of an administrative appeal as follows: "Service of the appeal shall be made by . . . (2) personal service by a proper officer or indifferent person making service in the same manner as complaints are served in ordinary civil actions . . . ."

Contrary to the position taken by the defendant, the legislature's use of the word "shall" is not sufficient to make compliance with this aspect of the statute mandatory. "While we generally will not look for interpretative guidance beyond the language of the statute when the words of that statute are plain and unambiguous . . . our past decisions have indicated that the use of the word shall, though significant, does not invariably create a mandatory duty. . . . In order to determine whether a statute's provisions are mandatory we have traditionally looked beyond the use of the word shall and examined the statute's essential purpose. . . . The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . A statutory provision of this type directs what is to be done but does not invalidate any action taken for failure to comply. . . . Furthermore, if there is no language that expressly invalidates any action taken after noncompliance with the statutory provisions, the statute should be construed as directory." (Citations omitted; internal quotation marks omitted.) *State* v. *Trahan,* 45 Conn. App. 722, 730–31, 697 A.2d 1153, cert. denied, 243 Conn. 924, 701 A.2d 660 (1997); see also *Martinez* v. *Dept. of Public*

*Safety*, 258 Conn. 680, 685, 784 A.2d 347 (2001). Applying *Trahan* to the facts of this case, we conclude that the use of "shall" in this statute, in all likelihood, indicates an intent that the requirement of service by an "indifferent person" be directory rather than mandatory.

## STATUTORY POLICY

In the absence of other illuminating language in the text of § 4-183 (c), we turn to the statute's legislative history and the circumstances surrounding its enactment and amendment. That history was comprehensively reviewed and explained in *Bittle* v. *Commissioner of Social Services*, 249 Conn. 503, 734 A.2d 551 (1999), a case in which the question was whether service through the use of certified mail was timely when it was mailed, but not delivered, within the statutory period for such service.

In *Bittle*, the court read the statute's legislative history as demonstrative of a legislative intent "to enhance rather than constrain" the rights of an administrative appellant. Id., 506–507. Amendments subsequent to the enactment of the statute were designed to "simplify administrative procedures in order to make the administrative process easier, and thus more practically useful to the public." Id., 514. The 1988 amendment of § 4-183, for example, was intended to "greatly enhance the administrative practices in the state of Connecticut and enhance them from the point of view of the consumer, the public." (Internal quotation marks omitted.) Id., 513, citing 31 S. Proc., Pt. 7, 1988 Sess., p. 2481, remarks of Senator James H. Maloney.[1]

In light of this unbroken legislative history, the court in *Bittle* concluded that the forty-five day window of

---

[1] The legislature has taken a similar position with regard to zoning appeals. See *Simko* v. *Zoning Board of Appeals*, 205 Conn. 413, 533 A.2d 879 (1987), aff'd, 206 Conn. 374, 538 A.2d 202 (1988), modified by Public Acts 1988, No. 88-79, § 1 (b); see also *Gadbois* v. *Planning Commission*, 257 Conn. 604, 607–608, 778 A.2d 896 (2001).

opportunity to serve process was not closed by a short delay in receipt of mail service by certified mail. The appropriate date by which to measure the timeliness of service, the court held, was the date of the post-marking of the relevant appeal papers. Id., 515. Section § 4-183 (c), as it then read, neither forbade nor authorized the service that the court found to be sufficient.[2]

The legislative policy on which *Bittle* relied has obvious bearing on the resolution of this case. The defendant claims, however, that *Bittle* is distinguishable because that case involved the timeliness of service, while this case concerns the manner of service. It is hard to see why a decision primarily based on legislative policy is as fact bound as the defendant would have it be. It is hard to find precedential cases that are squarely on all fours with cases that are litigated later. At the very least, *Bittle* counsels against a strict construction of § 4-183 (c) that would automatically impair the Superior Court's subject matter jurisdiction because of any and every deviation from the text of the statute. That caution applies in this case, even though timeliness of service is not at issue.

We conclude, therefore, that the legislative history of § 4-183 (c) is an important guidepost to the policy considerations that govern our decision in this case. The judgment rendered by the trial court is not consistent with that history.

## PREJUDICE

In addition to its examination of legislative policy and history, *Bittle* also considered the significance of the conceded fact that the defendant was not prejudiced by the short delay occasioned by the mailing, rather than the receipt, of appeal papers. It read § 4-183 (c)

---

[2] The legislature has now amended § 4-183 (c) to incorporate the holding in *Bittle*. See Public Acts 1999, No. 99-39.

conjointly with § 4-183 (d),[3] citing *Tolly* v. *Dept. of Human Resources*, 225 Conn. 13, 28–29, 621 A.2d 719 (1993). *Bittle* v. *Commissioner of Social Services*, supra, 249 Conn. 521–22 & n.14. The court noted that "Section 4-183 (d) provides a standard for dismissing appeals when parties other than agencies are not served, or are served with defective papers. This statutory standard is met upon a showing of actual prejudicial consequences stemming from a failure of service . . . ." Id., 521–22. In light of that standard, the court held that it could not "as a matter of public policy, raise a jurisdictional barrier against appellants for failing to deliver appeal documents to interested parties within the time prescribed by § 4-183 (c) . . . ." Id., 522.

In a footnote, *Bittle* elaborated on the relationship between § 4-183 (c) and (d). "There is an apparent conflict between subsections (c) and (d) of § 4-183 with respect to the legal consequences associated with the failure of an appellant to serve the agency. Section 4-183 (c) provides that 'failure to make . . . service within forty-five days on parties other than the agency that rendered the final decision shall not deprive the court of jurisdiction over the appeal. . . .' The law revision commission in elaborating on the application of subsection (c) of § 4-183 stated: 'Failure to serve parties other than the agency that rendered the final decision within the forty-five days is not a jurisdictional defect. Such failure to serve does, however, subject the appeal to dismissal on a showing of prejudice.' Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1988

---

[3] General Statutes § 4-183 (d) provides: "The person appealing, not later than fifteen days after filing the appeal, shall file or cause to be filed with the clerk of the court an affidavit, or the state marshal's return, stating the date and manner in which a copy of the appeal was served on each party and on the agency that rendered the final decision, and, if service was not made on a party, the reason for failure to make service. If the failure to make service causes prejudice to any party to the appeal or to the agency, the court, after hearing, may dismiss the appeal."

Sess., p. 385; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1988 Sess., p. 264, remarks of Steve Frazzini, executive director of the Hartford County Legal Aid Society . . . . Section 4-183 (d) provides, however, that '[i]f the failure to make service causes prejudice to any party to the appeal *or to the agency,* the court, after hearing, may dismiss the appeal.' . . . In *Tolly* v. *Dept. of Human Resources,* supra, 225 Conn. 28–29, we resolved this apparent conflict, and harmonized the two subsections of § 4-183 by concluding that a complete failure to serve the agency is the kind of defect in the service that deprives the court of subject matter jurisdiction; whereas, a defect in the papers effecting service makes the appeal subject to dismissal upon a showing of prejudice to the agency." (Emphasis in orginal.) *Bittle* v. *Commissioner of Social Services,* supra, 249 Conn. 522 n.14.

*Tolly* v. *Dept. of Human Resources,* supra, 225 Conn. 13, on which *Bittle* relied, was a case in which service, although timely and properly served, was defective in that the appeal papers did not include a citation.[4] *Tolly* held that this defect did not implicate the jurisdiction of the Superior Court unless the agency was prejudiced by the less than perfect manner of service. Id., 28–29. In the absence of a showing of prejudice, *Tolly* overturned a Superior Court dismissal of the appeal because the absence of a citation was not the equivalent of a "failure to make service at all within the applicable time period . . . ." Id., 28. Although § 4-183 (c) does not address prejudice, the court invoked the prejudice provision contained in § 4-183 (d).

The defendant challenges the propriety of a linkage between subsections (c) and (d) of § 4-183. It claims

---

[4] "A proper citation . . . requires not only the signature of a competent authority, such as a commissioner of the Superior Court, but the direction to a competent authority, such as a sheriff, constable or indifferent person, to summon the defendant to appear in court." *Tolly* v. *Dept. of Human Resources,* supra, 225 Conn. 19.

that the prejudice provision in § 4-183 (d) is irrelevant because it applies only to defective service on a party other than an agency. That argument is addressed to the wrong court. We are bound by our Supreme Court's decisions in *Bittle* and *Tolly*, which took a broader view of § 4-183 (c) and (d) than that which the defendant espouses.[5] Indeed, this court followed *Tolly* in *Klopp* v. *Commissioner of Income Maintenance*, 32 Conn. App. 335, 337, 630 A.2d 1358 (1993).

Neither *Bittle* nor *Tolly* gives carte blanche to an administrative appellant to ignore the service requirements of § 4-183 (c) entirely. The defendant argues that the appeal in this case was properly dismissed in light of other cases in which our courts have required strict compliance with § 4-183 (c).

In many of the cases that the defendant cites, the appeal was nonconforming because there was a total failure to serve a person entitled to service. Those were the facts of *Gadbois* v. *Planning Commission*, 257 Conn. 604, 608, 778 A.2d 896 (2001), *Redding* v. *Connecticut Siting Council*, 45 Conn. App. 620, 623, 697 A.2d 698, cert. denied, 243 Conn. 920, 701 A.2d 343 (1997), *Ertel* v. *Carothers*, 34 Conn. App. 18, 21, 639 A.2d 1055 (1994), and *Board of Education* v. *Local 1282*, 31 Conn. App. 629, 632, 626 A.2d 1314, cert. granted, 227 Conn. 909, 632 A.2d 688 (1993) (appeal withdrawn August 15, 1995).

The defendant also cites *Tarnopol* v. *Connecticut Siting Council*, 212 Conn. 157, 162–63, 561 A.2d 931 (1989). In that case, the defect of service was the then unauthorized service of process by certified mail rather

---

[5] As a general matter, our courts often look to related statutes on the same topic for interpretation of the particular statute at issue. See, e.g., *Dept. of Social Services* v. *Saunders*, 247 Conn. 686, 698, 724 A.2d 1093 (1999), citing *Conway* v. *Wilton*, 238 Conn. 653, 663–64, 680 A.2d 242 (1996); see also *State* v. *Ehlers*, 252 Conn. 579, 590, 750 A.2d 1079 (2000).

than by "in hand" service or abode service. Invoking the principle of strict construction, the Supreme Court concluded that this deviation from the prescribed rules deprived the trial court of subject matter jurisdiction. With respect to the specific facts of *Tarnopol*, its ruling was superseded by the 1988 amendment of § 4-183 (c). Nonetheless, the case has often been cited for the general principle of strict construction on which it relied. See *International Brotherhood of Police Officers, Local 564* v. *Jewett City*, 234 Conn. 123, 139, 661 A.2d 573 (1995); *McQuillan* v. *Dept. of Liquor Control*, 216 Conn. 667, 670, 583 A.2d 633 (1990); *Hefti* v. *Commission on Human Rights & Opportunities*, 61 Conn. App. 270, 274, 763 A.2d 688, cert. denied, 255 Conn. 948, 769 A.2d 62 (2001); *Ertel* v. *Carothers*, supra, 34 Conn. App. 21; *Board of Education* v. *Local 1282*, supra, 31 Conn. App. 632. Indeed, it was cited for that purpose in *Tolly* v. *Dept. of Human Resources*, supra, 225 Conn. 27.

The defendant argues that *Tarnopol* is particularly compelling because, as in this case, the defect in service was a defect in the manner in which service was made. Presumably, in *Tarnopol*, as in this case, the agency received proper appeal papers within the time limitations specified by statute.

It is equally important, however, to note that *Tarnopol* was decided before our Supreme Court, in *Tolly* and *Bittle*, undertook a more nuanced analysis of § 4-183 (c). The principle enunciated by these later cases differentiates between defects in service that constitute a total failure to serve process and defects that are less egregious. For the latter category, unless prejudice is shown, dismissal of an administrative appeal is not automatic.[6]

We must decide, therefore, whether, in the absence of a showing of prejudice, the defect in the service of

[6] See *Klopp* v. *Commissioner of Income Maintenance*, supra, 32 Conn. App. 338–39.

process in this case was the equivalent of a total failure of service of process. We conclude that it was not.

If the failure to include a citation in the appeal papers does not deprive a trial court of subject matter jurisdiction, as *Tolly* held, we cannot come to a different conclusion in the case of service by a person who was not authorized to do so. To the extent that there is a substantive distinction between *Tolly* and this case, subject matter jurisdiction is easier to sustain in this case. Here the defendant, in timely fashion, received *all* the required documents to which it was entitled, while in *Tolly*, the agency did *not* receive the citation. In neither case was the defect in service the equivalent of "a failure to make service at all within the applicable time period . . . ." See *Tolly* v. *Dept. of Human Resources*, supra, 225 Conn. 28.

The only possible distinction between the two cases is that *Tolly* concerned service of process by mail, while this case involves personal service. That is a distinction without a difference.

We conclude, therefore, that the trial court improperly dismissed the plaintiff's appeal. The text of § 4-183 (c), its legislative history and its construction by our Supreme Court persuade us that, in the circumstances of this case, in the absence of a showing of prejudice, the trial court had subject matter jurisdiction to hear the plaintiff's appeal on its merits. The result we have reached furthers the legislative intent to simplify administrative appeals so they are "easier, and thus more practically useful to the public." *Bittle* v. *Commissioner of Social Services*, supra, 249 Conn. 514.

### AGGRIEVEMENT

Even if the trial court was mistaken in its interpretation of § 4-183 (c), the defendant maintains that its judgment should be affirmed on the alternate ground

that the plaintiff failed to prove that he was aggrieved by the administrative decision that underlies this appeal. Before the trial court, this issue was pleaded and briefed, but not decided. The court therefore did not have the opportunity to evaluate the factual sufficiency of the plaintiff's claim of aggrievement.

This claim is premature. "Aggrievement presents a question of fact for the trial court and the party alleging aggrievement bears the burden of proving it. See, e.g., *Med-Trans, Inc.* v. *Dept. of Public Health & Addiction Services,* 242 Conn. 152, 159, 699 A.2d 142 (1997); *Bakelaar* v. *West Haven,* [193 Conn. 59, 65, 475 A.2d 283 (1984)]. We do not disturb the trial court's conclusions on appeal unless those conclusions are unsupported by the subordinate facts or otherwise violate law, logic or reason. *Kelly* v. *Freedom of Information Commission,* 221 Conn. 300, 308, 603 A.2d 1131 (1992); *Winchester Woods Associates* v. *Planning & Zoning Commission,* 219 Conn. 303, 309, 592 A.2d 953 (1991)." *Harris* v. *Zoning Commission,* 259 Conn. 402, 410, 788 A.2d 1239 (2002). Without a factual finding on aggrievement by the trial court, we have no record upon which to adjudicate the aggrievement issue on appeal.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.