[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The plaintiffs, Connecticut Natural Gas Corporation ("CNG") and CNG Realty, Inc. ("CNGR"), appeal from a final decision of the defendant Connecticut Department of Public Utility Control ("the department") concerning the allocation of the proceeds of the condemnation of the plaintiffs' property for the development of the Adriaen's Landing project in Hartford. The Office of Consumer Counsel ("OCC") has intervened in the appeal as an additional defendant. The court finds no error in the department's decision and dismisses the appeal.
 I
The administrative record establishes the following history. On September 29, 2000, the department approved the acquisition by the eminent domain power of the state, acting through the Office of Policy and Management, of the plaintiffs' main offices and 7½ acres of real property in downtown Hartford for the purpose of the Adriaen's Landing redevelopment project. See General Statutes § 32-650 et seq. The department ordered that CTG Resources, Inc. and its affiliates[1]
receive in compensation $30,261,000 for the taking and $6,789,000 in relocation costs, and that the state assume all environmental remediation costs for the property. (Court exhibit 2 (September 29, 2000 decision), p. 1.)
On October 25, 2000, in Phase II of the process, the department addressed the accounting implications of the condemnation for both the regulated and unregulated affiliates of CTG Resources, Inc. The department found that $1,509,000 of the real property award related to The Energy Network, Inc., an unregulated entity. The department concluded that the combined gains from the sale of the properties of CNG, a regulated public service company, see General Statutes § 16-1 (a) (4), and CNGR, an unregulated affiliate, see supra note 1, would be treated as "regulated property gain." The department also ordered that it CT Page 11037 would consider issues related to the "sharing of the gain on sales" in another proceeding. (Court exhibit 3 (October 25, 2000 decision) Summary, Findings of Fact, Conclusion.)[2]
In a third decision, dated March 14, 2001, the department determined that the total after-tax gain to be allocated to CNG was $6,988,000, which consisted of a $6,478,000 gain from property owned by CNG and $510,000 from property owned by CNGR. The department denied CNG's proposal to "flow the gain from the sale through the earnings sharing mechanism in its proposed incentive rate plan." The department instead ruled that the plaintiffs treat the gain as a credit on customer bills. (Court exhibit 4 (March 14, 2001 decision), pp. 1, 11.)[3]
The department then granted the plaintiffs' petition for reconsideration of the March 14, 2001 decision. After considering numerous arguments made by the plaintiffs, the department upheld its prior ruling. The department again held that the combined gain of CNG and CNGR must be applied as a reduction to revenue requirements. Based on the plaintiffs' revision of their statement of combined gain to the amount of $7,729,000, consisting of $6,548,000 to CNG and $1,181,000 to CNGR, the department ordered that the plaintiffs reduce their annual revenue requirements by $1,545,800. (Return of Record ("ROR"), Item XII, August 22, 2001 decision ("decision on reconsideration"), p. 1; p. 13 ¶¶ 1-2; p. 14.)
The plaintiffs appeal from this decision.
 II
At the outset, the department, supported by OCC, renews the claim made in the department's motion to dismiss that the court lacks subject matter jurisdiction over this appeal because the plaintiffs did not include a citation to an officer in their appeal papers. The court adheres to its ruling of November 26, 2001 that such a defect does not implicate the subject matter jurisdiction of the court but that instead should result in dismissal only when there is prejudice to a defendant, of which there is none here. This ruling finds additional support from the recent decision of Kindl v. Department of Social Services, 69 Conn. App. 563,566-75, 795 A.2d 622 (2002), which held that a plaintiffs failure to comply with the statutory requirement that a "proper officer or indifferent person" serve an administrative appeal did not implicate subject matter jurisdiction. See General Statutes § 4-183 (c).[4]
Logically, the requirement of a citation, which at most is implicit in the statutory language that service of the appeal shall be made "in the same manner as complaints are served in ordinary civil actions," cannot CT Page 11038 have a greater impact on subject matter jurisdiction than the "proper officer or indifferent person" requirement, which is in the statute explicitly. Accordingly, the court declines to dismiss this case for lack of subject matter jurisdiction.
 III
Under the Uniform Administrative Procedure Act ("UAPA"), General Statutes § 4-166 et seq., judicial review of an agency decision is very restricted. See MacDermid, Inc. v. Department of EnvironmentalProtection, 257 Conn. 128, 136-37, 778 A.2d 7 (2001). Section 4-183 6) of the General Statutes provides as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Stated differently, "[j]udicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) Schallenkamp v.DelPonte, 229 Conn. 31, 40, 639 A.2d 1018 (1994). "It is fundamental that a plaintiff has the burden of proving that the [agency], on the facts before [it], acted contrary to law and in abuse of [its] discretion. . . ." (Internal quotation marks omitted.) Murphy v. Commissioner of MotorVehicles, 254 Conn. 333, 343, 757 A.2d 561 (2000).
The plaintiffs' main issue on appeal is the propriety of the department's decision to treat the combined gains from the sale of CNG and CNGR properties as "regulated property gain," rather than treat CNGR's gain from the sale as that of a separate unregulated entity that should not be credited to ratepayers. The defendants argue that the CT Page 11039 department decided this issue conclusively in Phase II and that the doctrines of administrative res judicata and collateral estoppel bar its relitigation. See generally New England Rehabilitation Hospital ofHartford, Inc. v. Commission on Hospitals and Health Care, 226 Conn. 105,128-30, 627 A.2d 1257 (1993). In its decision on reconsideration, the department did in fact find that, in Phase II, the plaintiffs themselves proposed to combine CNG's and CNGR's gains, that no party challenged this proposal, and that therefore no party could "collaterally challenge or appeal" the department's acceptance of this proposal. (ROR, decision on reconsideration, pp. 4-5.) However, the department went on to reconsider the merits of whether it had "independent authority" to combine these gains. (ROR, decision on reconsideration, pp. 5-6.) Given that a central purpose of the res judicata rule is to promote the interest in judicial economy, see Commissioner of Environmental Protection v. ConnecticutBuilding Wrecking Co., 227 Conn. 175, 188, 629 A.2d 1116 (1993), and that the department chose not to enforce that interest but rather to reconsider the plaintiffs' claim on the merits, there is little judicial economy to promote by denying review of the department's decision. Therefore, the court will review the merits of the department's ruling on this issue.
On April 4, 1978, the state Public Utilities Control Authority ("authority") approved the application of CNG to transfer approximately 3.4 acres of real property in downtown Hartford to CNGR, a wholly-owned subsidiary, for the purpose of the construction of an operating and administrative center. CNG proposed that it would lease the center from CNGR with rental payments fixed at a level necessary to allow CNGR to meet its mortgage expenses. (Court exhibit 1 (April 4, 1978 decision), pp. 1-4.) The authority accordingly found that CNGR is a "single purpose corporation which was created for the sole purpose of issuing its mortgage note for the financing of the planned operating and administrative center of the Connecticut Natural Gas Corporation." (Court exhibit 1, p. 3.)
The department reviewed this history in its decision on reconsideration and made several additional findings. The department observed that CNG was the sole source of income for CNGR and that CNG's rental payments equaled CNGR's total expenses. The department noted that CNG files CNGR's annual financial statements with the department. The department also found that CNGR sells no product and does not compete in an unregulated marketplace. (ROR, decision on reconsideration, p. 5.)
Based on these facts, the department quite reasonably decided to combine the gains of CNG and CNGR for determining the credit to ratepayers. The department has statutory authority to "examine and CT Page 11040 regulate the transfer of existing assets and franchises . . . of public service companies and the establishment of the level and structure of rates. . . ." General Statutes § 16-19e (a).[5] This statute gives the department a "broad grant of regulatory authority." Connecticut Light Power Co. v. Department of Public Utility Control, 219 Conn. 51, 64,591 A.2d 1231 (1991). As the department observed, public service commissions have historically disregarded the corporate form to regulate what, in substance, is the composite public utility. (ROR, decision on reconsideration, p. 6.) See Tennessee Public Service Commission v.Nashville Gas Company, 551 S.W.2d 315, 319-20 (Tenn. 1977) ("Considerations of `piercing the veil,' which are involved in cases involving tort, misconduct or fraud, are largely irrelevant in the regulatory and revenue fields.") In this case, CNGR was "unregulated in name only." (ROR, decision on reconsideration, p. 5.) It was thus a particularly appropriate candidate for public utility regulation.
Indeed, the single purpose of CNGR was "to facilitate 100% financing for the benefit of ratepayers as opposed to a less aggressive financing technique that would be available to the public utility." (ROR, decision on reconsideration, p. 5.) Because CNGR was thus created for the benefit of the ratepayers, it only makes sense that ratepayers benefit from CNGR's gain. Similarly, although CNGR's property was not in CNG's rate base, CNG's lease payments, which funded all of CNGR's principal repayments for that property, as well as the interest, depreciation, plant additions, and capital improvements, were included in CNG's rate requirements. (ROR, decision on reconsideration, p. 8 n. 2.) The department could reasonably have concluded that, because CNG's ratepayers had borne the burden of these lease payments, they should also recover the benefits when the state acquired the property. The department's decision was thus a proper exercise of its statutory authority.
This conclusion finds additional support from the fact that CNG itself originally proposed that the department combine its gains with that of CNGR. (ROR, decision on reconsideration, pp. 3-4; p. 13 ¶ 4.) CNG explained that "CNG Realty and CNG should be viewed in total as an entity and [The Energy Network] or unregulated should be viewed by itself" (Internal quotation marks omitted.) (ROR, decision on reconsideration, p. 4.) Contrary to the plaintiffs' argument, this proposal was unconditional. (ROR, decision on reconsideration, p. 4.) When asked during the Phase II hearings for the real reason for CNG's proposal to treat CNG and CNGR as one entity, a CNG representative replied: "I think the reason was that it would not pass any credibility test to try to keep them separate." (Internal quotation marks omitted.) (ROR, decision on reconsideration, p. 4)[6]
CT Page 11041
The plaintiffs next argue that the department's decision to combine the gains of CNG and CNGR for the benefit of the ratepayers amounts to an unconstitutional taking of property without just compensation to the shareholders. The plaintiffs overlook the fact that, putting aside the issue of combined gain, they and their shareholders received approximately $37 million from the condemnation and the state agreed to assume all environmental remediation costs. Further, in determining CNG's revenue requirements, the department allowed CNG to recover for the rent expense of the administration center, certain plant additions and improvements, and other costs such as insurance, property taxes, and maintenance. (ROR, decision on reconsideration, p. 10; p. 13-14 ¶¶ 7-9.) Thus, this case is hardly one in which a property owner received no compensation for the condemnation of his property. Rather, this case concerns only the distribution of the proceeds of that condemnation. See generally Connecticut Light Power Co. v. Department of Public UtilityControl, supra, 219 Conn. 62.
Two final issues deserve only summary discussion. First, the plaintiffs claim that the state is estopped from ordering CNG to forfeit the proceeds of the condemnation. Because the plaintiffs did not present the estoppel issue in their petition for reconsideration and the department did not grant reconsideration of this issue, the court declines to address it. (ROR, decision on reconsideration, p. 2.) See Burnham v.Administrator, 184 Conn. 317, 323, 439 A.2d 1008 (1981). Second, the plaintiffs assert that the department failed to consider the value to ratepayers of the provision in the agreement relieving the plaintiffs from having to conduct environmental remediation. Although the plaintiffs did raise this issue in their petition for reconsideration, the department declined to revisit this issue because the environmental costs were unquantified and because the award of compensation already reflected the respective benefits and burdens stemming from the transfer of the obligation to conduct environmental remediation. (ROR, decision on reconsideration, p. 9.) The court finds no abuse of discretion in this decision.
 IV
The plaintiff having failed to sustain the grounds for its appeal, the appeal is dismissed.
Carl J. Schuman Judge, Superior Court