MILLWARD BROWN, INC. *v.* COMMISSIONER OF
REVENUE SERVICES
(AC 22258)

Mihalakos, Bishop and Peters, Js.

Argued September 12—officially released November 26, 2002

*Jonathon L. Ensign*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Edward F. Reynolds, Jr.*, assistant attorney general, for the appellant (defendant).

*Ian E. Bjorkman*, with whom were *Kenneth D. Heath* and, on the brief, *Peter H. Gruen*, for the appellee (plaintiff).

*Opinion*

PETERS, J. General Statutes § 12-214[1] requires multistate corporations that do business in Connecticut to pay a Connecticut corporate business tax. To determine the amount of a multistate corporation's tax liability, the commissioner of revenue services apportions the corporation's income to Connecticut in accordance with one of the formulae stated in General Statutes § 12-218. The one factor formula contained in § 12-218 (a) applies to a corporation's income if that income is *not* "derived from . . . the manufacture, sale or use of tangible personal or real property . . . ." By contrast, if a taxpayer's income *is* so derived, the applicable formula is the three factor formula contained in § 12-218 (b).[2] In this case, the commissioner of revenue

---

[1] General Statutes § 12-214 (a) (1) provides in relevant part that "[e]very mutual savings bank, savings and loan association and every company engaged in the business of carrying passengers for hire over the highways of this state in common carrier motor vehicles doing business in this state, and every other company carrying on, or having the right to carry on, business in this state, including a dissolved corporation which continues to conduct business, except those companies described in subdivision (2) of this subsection, shall pay, annually, a tax or excise upon its franchise for the privilege of carrying on or doing business, owning or leasing property within the state in a corporate capacity or as an unincorporated association taxable as a corporation for federal income tax purposes or maintaining an office within the state, such tax to be measured by the entire net income as herein defined received by such corporation or association from business transacted within the state . . . ."

[2] General Statutes § 12-218 provides in relevant part: "(a) Any taxpayer which is taxable both within and without this state shall apportion its net income as provided in this section. For purposes of apportionment of income under this section, a taxpayer is taxable in another state if in such state

services determined the corporation's tax liability in accordance with subsection (a), while the trial court held that subsection (b) applied. We agree with the court and affirm its judgment in favor of the corporation.

The plaintiff, Millward Brown, Inc. (taxpayer), appealed to the trial court to contest the validity of a deficiency assessment[3] resulting from the decision of the defendant commissioner of revenue services (commissioner) to use the one factor formula of § 12-218 (a) to measure its income for the tax periods between 1989 and 1991. The commissioner moved to dismiss the appeal as untimely under General Statutes § 12-237.[4]

such taxpayer conducts business and is subject to a net income tax, a franchise tax for the privilege of doing business, or a corporate stock tax, or if such state has jurisdiction to subject such taxpayer to such a tax, regardless of whether such state does, in fact, impose such a tax.

"(b) The net income of the taxpayer, when derived from business other than the manufacture, sale or use of tangible personal or real property, shall be apportioned within and without the state by means of an apportionment fraction, the numerator of which shall represent the gross receipts from business carried on within Connecticut and the denominator shall represent the gross receipts from business carried on everywhere, except that any gross receipts attributable to an international banking facility, as defined in section 12-217, shall not be included in the numerator or the denominator. Gross receipts as used in this subsection shall have the same meaning as used in subdivision (3) of subsection (c) of this section."

[3] The assessment was in the amount of $116,666.15 plus interest and penalty.

[4] General Statutes § 12-237 provides in relevant part: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services under the provisions of this part may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of New Britain, which shall be accompanied by a citation to the Commissioner of Revenue Services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause

After the court's denial of that motion, the commissioner reiterated its reliance on § 12-218 (a). The court concluded that the applicable statute was § 12-218 (b) and rendered judgment accordingly. The commissioner has appealed.

The commissioner renews the arguments that he raised before the trial court. Because each argument raises a question of statutory construction, a question of law, our review is plenary. See, e.g., *State* v. *Russo*, 259 Conn. 436, 447, 790 A.2d 1132, cert. denied, 537 U.S. 879, 123 S. Ct. 79, 154 L. Ed. 2d 134 (2002); *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995); *Kindl* v. *Dept. of Social Services*, 69 Conn. App. 563, 566, 795 A.2d 622 (2002). Well established principles describe the scope of our plenary review. "[I]t is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 403, 780 A.2d 903 (2001); *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 26, 717 A.2d 77 (1998).

I

SUBJECT MATTER JURISDICTION

We consider first the merits of the commissioner's motion to dismiss this case on the ground that the

appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the Treasurer to pay the amount of such relief, with interest at the rate of eight per cent per annum, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the

taxpayer waited too long to take an appeal to the Superior Court. The time to file a tax appeal is set by § 12-237. Because the right to take a tax appeal is entirely statutory, if the commissioner's contention is correct, then the trial court lacked subject matter jurisdiction.[5] Cf., e.g., *Tolly* v. *Dept. of Human Resources*, 225 Conn. 13, 27, 621 A.2d 719 (1993).

The parties stipulated to the following facts. At some undetermined time prior to April 28, 1997, the commissioner denied the taxpayer's request for reassessment of its tax liability under § 12-218. The commissioner notified the taxpayer of his decision in a letter sent by first class mail. The mailing occurred at some time prior to April 28, 1997. The taxpayer received the letter on April 28, 1997, and filed its tax appeal on May 28, 1997.

Under § 12-237,[6] the commissioner was required to serve the taxpayer with notice of the denial of its reassessment claim. The statute did not define the manner in which the commissioner was obligated to make service. Once service had been made, the taxpayer had one month to appeal to the Superior Court.

In the commissioner's view, the taxpayer's appeal was untimely because it was not filed within one month of the date of service on the taxpayer. The commissioner maintains that he served notice on the taxpayer by *mailing* the notice by first class mail. The taxpayer argues, however, and the trial court held, that the appeal was timely because it had been filed within thirty days of the date of the taxpayer's *receipt* of notice from the commissioner.

case demands; and, upon all such appeals which may be denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

[5] By contrast, issues relating to the adequacy of service of process in a civil case involve only the court's personal jurisdiction. See, e.g., *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 442, 797 A.2d 1081 (2002).

[6] See footnote 4.

The commissioner takes issue with the holding of the trial court for three reasons. He argues that the undefined term "service" in § 12-237 should be construed to permit service to be made by first class mail because (1) the statute should be narrowly construed because it implicates the state's sovereign immunity, (2) the absence of a definition of service authorizes the commissioner to use any manner of service that is authorized by other tax statutes, and (3) the legislature has enacted General Statutes § 12-2f to clarify that service of process under § 12-237 could properly be made by first class mail. We disagree with each of these arguments.

### A

Unless expressly waived, sovereign immunity protects the state from liability for private litigation that may interfere with the functioning of state government and may impose fiscal burdens on the state. *Pamela B.* v. *Ment,* 244 Conn. 296, 328, 709 A.2d 1089 (1998); *Herzig* v. *Horrigan,* 34 Conn. App. 816, 819, 644 A.2d 360 (1994). We agree with the taxpayer that this case does not infringe on the state's sovereign immunity. The commissioner has cited no precedents that invoke sovereign immunity to the construction of a statute that expressly grants a taxpayer the right to appeal from the decision of a governmental agent. We know of none.

### B

The commissioner is on stronger footing when he reminds us that failure to comply with the statutory requirements for a tax appeal deprives a trial court of subject matter jurisdiction. This principle has regularly been applied to administrative appeals. *Bittle* v. *Commissioner of Social Services,* 249 Conn. 503, 504–505, 734 A.2d 551 (1999); *Kindl* v. *Dept. of Social Services,* supra, 69 Conn. App. 564–65. We recognize that tax appeals differ from other administrative appeals

because only tax appeals are trials de novo. See, e.g., *Jones* v. *Crystal*, 242 Conn. 599, 602, 699 A.2d 961 (1997), overruled in part on other grounds, *Lisee* v. *Commission on Human Rights & Opportunities*, 258 Conn. 529, 542 n.16, 782 A.2d 670 (2001); *Texaco, Inc.* v. *Groppo*, 215 Conn. 134, 137, 574 A.2d 1293 (1990). For jurisdictional purposes, however, we can see no distinction between tax appeals and other statutory appeals.

The jurisdictional issue in this case turns on the undefined term "service" in § 12-237. If, as the commissioner argues, § 12-237 permitted him to make service by first class mail, the taxpayer bore the risk of delay in the receipt of notice of an adverse decision by the commissioner. Such a delay, as in this case, usually will shorten the time to file a tax appeal in the Superior Court. To the contrary, if, as the taxpayer argues, § 12-237 contemplated service by a taxpayer's receipt of notice, the commissioner bore the risk of uncertainty about the date when notice had been received, with the consequence that the appeal period might be prolonged beyond the period contemplated by the statute.

Our construction of the term "service" in § 12-237 proceeds without the benefit of statutory guidance or appellate judicial gloss. Both parties rely on statutes that *expressly* do, or do not, authorize service by first class mail. Those statutes do not shed light on "service" as an undefined term. The judicial record is equally barren. Our research has not found any Connecticut appellate cases that allude to the meaning of the undefined term "service" in § 12-237.

The trial court concluded that § 12-237 should be construed in favor of the taxpayer because that construction was consistent with principles of fairness and due process. Without an express definition of "service," the court was understandably reluctant to ascribe to the legislature the intent to deem a taxpayer to have

received notice when it had not actually received the notice. We agree with the court's conclusion.

The court's conclusion conforms to the established rule of statutory construction with respect to statutes that implicate the subject matter jurisdiction of the Superior Court. Whenever such a statute contains language that is ambiguous, or, as in this case, fails to define an essential term, the statute is construed in favor of subject matter jurisdiction. See, e.g., *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 266, 777 A.2d 645 (2001); *Banks* v. *Thomas*, 241 Conn. 569, 582–83, 698 A.2d 268 (1997); *Olympia Mortgage Corp.* v. *Klein*, 61 Conn. App. 305, 307, 763 A.2d 1055 (2001).

Furthermore, the court's conclusion is consistent with the policy position that our Supreme Court has taken with regard to administrative appeals pursuant to General Statutes § 4-183 (c). In these appeals, our Supreme Court has construed requirements of service and notice so as to preserve the appellate rights of those aggrieved by governmental orders. See, e.g., *Bittle* v. *Commissioner of Social Services*, supra, 249 Conn. 505; *Tolly* v. *Dept. of Human Resources*, supra, 225 Conn. 28–29. We note that the court's decisions have turned, in part, on the lack of a showing of prejudice to the governmental agency in question. This case, similarly, contains no allegation of prejudice to the commissioner as a result of his delayed notice of the taxpayer's intent to appeal.

In sum, we conclude that, in the absence of a definition of "service" in § 12-237, the trial court properly denied the commissioner's motion to dismiss the taxpayer's appeal as untimely. The court had subject matter jurisdiction to adjudicate the merits of the taxpayer's appeal with respect to the measure of its tax liability under § 12-218.

## C

The commissioner's final argument rests on the legislature's 1999 enactment of § 12-2f by Public Acts 1999, No. 99-121, § 26. Section 12-2f now expressly permits the commissioner to serve notice by first class mail. For the future, our discussion in part I B is academic.

At the time when the new section became effective, the trial court in this case already had denied the commissioner's motion to dismiss. It had not yet, however, considered the taxpayer's claim on its merits. The commissioner did not bring the enactment of § 12-2f to the attention of the trial court.

The commissioner, nonetheless, has the right to raise in this court the question of the impact of § 12-2f on the taxpayer's right to judicial review. A claim of lack of subject matter jurisdiction cannot be waived. Such a claim properly may be raised at any time by the parties or by the court. "[W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case . . . ." (Internal quotation marks omitted.) *Kindl v. Dept. of Social Services*, supra, 69 Conn. App. 565; see also Practice Book § 10-33; *Concerned Citizens of Sterling v. Sterling*, 204 Conn. 551, 557, 529 A.2d 666 (1987).

The commissioner contends that § 12-2f applies to this case because, in his view, the legislature enacted § 12-2f to clarify, rather than to change, existing law. He does not dispute the presumption that a statutory amendment of substantive rights was intended to change existing law and therefore has only prospective application. General Statutes § 55-3; *Andersen Consulting, LLP v. Gavin*, 255 Conn. 498, 516–17, 767 A.2d 692 (2001); *Coley v. Camden Associates, Inc.*, 243 Conn. 311, 316, 702 A.2d 1180 (1997). This presumption is, however, rebuttable. *Andersen Consulting, LLP v. Gavin*, supra, 516–17.

The legislature may manifest its intent to enact a new statute to clarify rather than to change existing law. Legislation intended to clarify the original intent of an earlier statute "necessarily has retroactive effect." (Internal quotation marks omitted.) *Toise* v. *Rowe*, 243 Conn. 623, 628, 707 A.2d 25 (1998). The commissioner maintains that § 12-2f clarifies the legislature's original intent in enacting § 12-237.

The commissioner acknowledges that he cannot prevail unless he can point to express indicia of the legislature's intent to enact § 12-2f as a clarifying statute. He claims that the legislature manifested its intent in two ways.

First, because the legislature enacted § 12-2f promptly after the trial court's ruling on jurisdiction, the commissioner argues that it is reasonable to infer that § 12-2f was intended to correct the court's decision. The legislative record does not support this inference. The commissioner has not pointed to any mention of the decision anywhere in the legislative history of § 12-2f.

Second, the commissioner refers to several instances in the legislative commentary on the bill that became Public Act 99-121 in which a speaker described the act as containing technical changes and corrections in our tax laws. These statements must be read in the context of an omnibus bill addressing a laundry list of the commissioner's statutory concerns. The commissioner has not cited any legislative statement relating specifically to § 26 of the act, which contained the new § 12-2f. The same legislature revised § 12-237, but in a separate act. See Public Acts 1999, No. 99-215, § 24.[7] There is no legislative history suggesting linkage between these two acts. The absence of such linkage may reflect the legislature's recognition that § 12-2f has a broader scope than

[7] Public Acts 1999, No. 99-215, § 24, amended § 12-237 to change the judicial district to which tax appeals must be brought.

§ 12-237, because the new section applies, across the board, to all "service" provisions anywhere in title 12 of the General Statutes.

It was the commissioner's burden to establish that the legislature intended a new statute to be a clarification, rather than a change, in existing law. To meet this burden, the commissioner was required to adduce specific legislative testimony to that effect. See *Colonial Penn Ins. Co.* v. *Bryant*, 245 Conn. 710, 721, 714 A.2d 1209 (1998). The commissioner did not make such a showing. We conclude, therefore, that § 12-2f does not govern this case so as to deprive the trial court of jurisdiction to consider the merits of the taxpayer's appeal.

In sum, we affirm the decision of the trial court that it had subject matter jurisdiction to hear this tax appeal. The court properly concluded that § 12-237 did not authorize the commissioner to serve notice by the use of first class mail. We conclude that the subsequent enactment of § 12-2f, which did authorize such service, did not cause the trial court to lose jurisdiction retroactively.

## II

### SECTION 12-218

On the merits, the commissioner challenges the propriety of the trial court's determination that the taxpayer's liability should have been measured by the three factor formula contained in § 12-218 (b) rather than, as the commissioner maintains, by the single factor formula contained in § 12-218 (a). The commissioner argues that § 12-218 (a) applies because, in his view, the taxpayer's income was *not* derived from the manufacture, sale or use of tangible personal or real property. We must decide whether this is an apt characterization of the manner in which the taxpayer operates its market

research business. Like the trial court, we are persuaded that the taxpayer's use of telephone and computer equipment was an integral part of its operation and consequently that its taxable income should be apportioned to Connecticut in accordance with § 12-218 (b).

At the outset, we note that, in construing § 12-218, we must apply a statute that requires us to determine whether a taxpayer's income is "derived from . . . [the] use of tangible personal . . . property"; General Statutes § 12-218 (b); without guidance about the meaning of that phrase. In the absence of statutory enlightenment, we must construe § 12-218 in accordance with the principle that any ambiguity in its application must be resolved in favor of the taxpayer and against the commissioner. *Andersen Consulting, LLP* v. *Gavin,* supra, 255 Conn. 511; *Foodways National, Inc.* v. *Crystal,* 232 Conn. 325, 331, 654 A.2d 1228 (1995).

Bearing this principle in mind, we now turn to the applicability of § 12-218 to the facts of this case. The facts found by the trial court are undisputed. "[The taxpayer] is a Delaware corporation with offices located throughout this country as well as in twenty-seven other countries. [The taxpayer] is a major market research company performing marketing research for major corporations such as Kraft Foods, Cadbury, United Distilleries, and Hershey Chocolates. The primary activity of [the taxpayer] is to measure the effects of advertising and brand development. This is done by collecting and analyzing data concerning many consumer and market related issues such as consumer product recognition, market share, advertising and other matters that are important to advertisers and consumer product marketers.

"[The taxpayer] basically conducts telephone surveys through a very controlled and sophisticated process to find out what is on consumers' minds, then analyzes

this information by downloading it into computers. The process used by the interviewers is known as the Computer Assisted Telephone Interview (CATI). [The taxpayer's] process of collecting data is labor and capital intensive because [it] uses computers, telephones and other equipment to gather and analyze the market data.

"In 1990 and 1991, [the taxpayer] maintained five data collection centers in this country. Each data collection center operated from 3 p.m. to 10 p.m., using hundreds of telephone interviewers at each data collection center. Eighty-five percent of the data collection is done through telephone surveys. Fifteen percent of the data collection is conducted through mail surveys. The telephone surveyors used by [the taxpayer] work solely for [the taxpayer], and are trained and supervised by [the taxpayer]'s employees. Each telephone interviewer has his or her own station to make calls. The interviewer dials the telephone from a number provided by a computer. The interviewer's computer has a screen containing a scripted program from which the interviewer reads and then enters the responses into the computer. All of the interviewers have the same computer questions to provide consistency and maintain the integrity of the surveys. The telephone surveyors use telephones and high speed computers to call approximately 35 million households per year.

"Approximately 40,000 phone hours per month are used to gather data. After the raw data is collected by the interviewers, powerful computers are used to analyze the information. In formulating and analyzing the responses to the surveys, [the taxpayer] generally goes through a four-step process by: (1) designing a sampling plan, (2) collecting respondent data, (3) tabulating the results, and (4) formulating its analysis. [The taxpayer's] staff is then able to present its final analysis and conclusions to its clientele. [The taxpayer] delivers a personal presentation and written report to a client

reviewing the results of its analysis, with computer generated charts and graphs depicting and displaying the data compiled by [the taxpayer].

"[The taxpayer]'s capital costs consist of the purchase of computers, screens, telephone systems and software licenses. In 1989, [the taxpayer] spent $174,000, or 28 [percent] of its total expenditures, for its information system. Apart from the expenditure of $174,000 for its information system, [the taxpayer] spent approximately $400,000 in 1989 for equipment not related directly to the production of income, such as office furniture, office telephones, cubicles and work stations. In 1990, [the taxpayer] spent $374,000 for its information system, which was directly related to the production of income." The commissioner argues that, despite the taxpayer's pervasive use of computers, telephones and telephone interviewers, the trial court improperly permitted the taxpayer to pay its Connecticut tax in accordance with the three factor formula of § 12-218 (b). He acknowledges that "telephone interviewing was necessary as a matter of economic efficiency (time and money) for the [taxpayer] to remain competitive in the industry." Nonetheless, he maintains that the taxpayer's use of tangible personal property was not essential to the performance of its services because the taxpayer could have gathered information through personal interview, by telephone or by mail questionnaires.

In *Schlumberger Technology Corp.* v. *Dubno*, 202 Conn. 412, 423–26, 521 A.2d 569 (1987), our Supreme Court discussed the applicability of § 12-218 to service providers who use tangible personal property in the course of their commercial activities. After rejecting the proposition that all service providers automatically have their income apportioned to this state in accordance with the one factor formula contained in § 12-218 (a), the court examined the relevant facts.

The taxpayer in *Schlumberger* provided wireline services to the oil and gas industry to determine the feasibility of producing oil or gas at a designated site. For that purpose, the taxpayer collected on-site data through the use of a specially designed sensory instrument. The data was then transmitted to a mobile laboratory where it was recorded in a form usable by the taxpayer's engineers. Id., 426–27. The engineers' analyses were the basis of the taxpayer's reports to its customers.

Under those circumstances, *Schlumberger* held that the taxpayer's income should be apportioned in accordance with the three factor analysis of § 12-218 (b). Id., 429. That holding is controlling in this case. Like the trial court, for taxation purposes, we cannot see a significant difference between *Schlumberger*'s wireline services and this taxpayer's marketing research services. In each, the taxpayer gathered data and provided reports based on information that could not have been acquired, economically, without the use of tangible personal property. In each case, therefore, the use of tangible personal property was an essential part of the taxpayer's ability to conduct its business profitably.

We recognize the commissioner's concern that, if we sustain the applicability of § 12-218 (b) under the circumstances of this case, § 12-218 (a) may become a dead letter. Our Supreme Court considered and rejected this argument in *Schlumberger*. "If indeed few modern businesses today operate without relying on the use of tangible property as an essential part of their businesses, and the class of § 12-218 (a) taxpayers is shrinking, it is for the legislature, and not for the courts, to decide whether the reach of the three factor formula of § 12-218 (b) has become too all inclusive." Id., 426.

The legislature has not amended subsections (a) or (b) of § 12-218 in any relevant way for fifteen years.[8]

---

[8] By contrast, in Public Acts 1999, No. 99-121, § 4, the legislature amended § 12-218 (h).

We presume that the legislature is aware of a judicial interpretation of a statute and that its subsequent non-action may be understood as a validation of that interpretation. *White* v. *Burns*, 213 Conn. 307, 333, 567 A.2d 1195 (1990); *Phelps Dodge Copper Products Co.* v. *Groppo*, 204 Conn. 122, 134, 527 A.2d 672 (1987); *Cummings* v. *Twin Mfg., Inc.*, 29 Conn. App. 249, 256, 614 A.2d 857 (1992).

In conclusion, in light of the facts of this case, we agree with the trial court that the taxpayer's Connecticut income tax is to be measured in accordance with § 12-218 (b). Because the apportionment factors contained in § 12-218 (b) have not yet been applied to the taxpayer's income, we remand this case for further consideration by the commissioner in accordance with this opinion.

The judgment is affirmed and the case is remanded with direction to remand the case to the commissioner of revenue services for a determination of the taxpayer's corporate income tax under § 12-218 (b).

In this opinion the other judges concurred.