[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS (#119), MOTION FOR DECLARATORY RULING AND/OR MANDAMUS (#135), AND MOTION TO DISMISS (#152)
The underlying claim in this case arises out of medical treatment rendered to the plaintiff, Gerald Bloom, by the defendants, Julie Gershon, M.D. and Alisa Siegfeld, M.D. The plaintiff developed lung cancer and accuses the defendants of negligence by failing to diagnose his condition in their treatment of him. By summons and complaint dated February 8, 2002, the plaintiff brought suit against the defendants. A substitute complaint dated April 10, 2002, named Mandell Blau, P.C. (Mandell Blau) as an additional defendant. Sandra Bloom, wife of the plaintiff, filed a loss of consortium claim against these same defendants.
On July 12, 2002, the defendants filed an apportionment complaint against Kevin Shea, M.D. and Henry Maresh, M.D. pursuant to General Statutes §§ 52-102b and 52-572h, alleging negligence against Shea and Maresh in separate counts. Pursuant to Section (d) of § 52-102b,[1]
the plaintiffs, Gerald and Sandra Bloom, filed direct claims against the apportionment defendants Shea and Maresh by way of amended complaint dated August 5, 2002.[2]
On August 28, 2002, the apportionment defendant Shea filed with the court a motion to dismiss the apportionment claim and the plaintiff's direct action against him, claiming that at the time of the incident he was a state employee and is therefore immune from suit pursuant to General Statutes § 4-165. Shea maintains that the claims commissioner has not authorized suit against him in Superior Court as required by General Statutes § 4-160 and, therefore, the court has no subject matter jurisdiction over him.
On October 11, 2002, the defendants/apportionment plaintiffs, Gershon, Siegfeld and Mandell Blau, filed a memorandum of law in opposition to Shea's motion to dismiss, in which they assert that seeking CT Page 2433 authorization from the claims commissioner prior to initiating the apportionment complaint against Shea would have been an exercise in futility because of the claims commissioner's policy of refusing to authorize apportionment claims. The defendant/apportionment plaintiffs further maintain in their memorandum that notwithstanding this first argument, they have since filed a proper notice of claim and a certificate of good faith with the claims commissioner, who is obligated to authorize their claim pursuant to § 4-160 (b). As a result, they claim that Shea should not be immune from suit. Attached to their memorandum is a copy of the notice of claim filed with the claims commissioner and the required certificate of good faith, dated September 11, 2002.
On October 24, 2002, Maresh filed a motion for declaratory ruling and/or mandamus, requesting a declaratory ruling and order in the nature of mandamus from the court requiring the claims commissioner to authorize suit against the state.[3] Filed with the motion and supporting memorandum of law was the certificate of good faith and the notice of claim filed with the claims commissioner, dated October 21, 2002, requesting authorization from the claims commissioner to file suit against Shea via an apportionment complaint.
On November 6, 2002, Shea filed an objection to the amended motion for declaratory judgment, asserting that neither the claims, commissioner nor the State of Connecticut is a party to this action and that the motion is an attempt to circumvent the provisions of General Statutes §§ 4-160
and 52-102b, which require the claims commissioner to authorize suit against the state before a claim can be brought in Superior Court.
On November 13, 2002, Maresh filed a reply to Shea's objection to the motion for declaratory judgment and/or mandamus, claiming that reasonable notice of the requested declaratory judgment has been given to both the State of Connecticut and the claims commissioner, and that the legislature has effectively waived sovereign immunity in medical malpractice claims that are accompanied by a certificate of good faith through the clear language of § 4-160 (b).
On November 13, 2002, the claims commissioner filed an objection to the amended motion for declaratory judgment, having first filed an appearance as an "interested person" on November 8, 2002. In his objection, the claims commissioner argues that he alone has the authority to review a claim of medical malpractice and to make a determination of whether to authorize such a claim based on the facts. He further argues that Maresh's application is currently pending before the claims commissioner and the appropriate forum for an appeal of his decision is with the CT Page 2434 legislature, not this court.
Finally, the State of Connecticut filed an appearance on December 10, 2002, and on December 12, 2002, filed a motion to dismiss Maresh's apportionment complaint against the State on the grounds that it is immune from suit under the doctrine of sovereign immunity, and that the claims commissioner has not authorized the apportionment plaintiff to sue them in Superior Court. Maresh subsequently filed an objection to the State's motion to dismiss on January 6, 2002, wherein he makes the same argument set out in his motion for declaratory ruling/mandamus filed on October 24, 2002.
"A motion to dismiss shall be used to assert lack of jurisdiction over the subject matter, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court . . . [T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Citation omitted; internal quotation marks omitted.) Kizis v.Morse Diesel International, Inc., 260 Conn. 46, 51, 794 A.2d 498 (2002). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) Stepney Pond Estates, Ltd. v. Monroe,260 Conn. 406, 417, 797 A.2d 494 (2002). "Whenever . . . a statute contains language that is ambiguous, or . . . fails to define an essential term, the statute is construed in favor of subject matter jurisdiction." Millward Brown, Inc. v. Commissioner of Revenue Services,73 Conn. App. 757, 765, 811 A.2d 717 (2002).
The issue before the court is the authority of the claims commissioner and his role in authorizing a medical malpractice claim against a physician employed by the state, in this case, Shea. General Statutes § 4-160 (b) provides: "In any claim alleging malpractice against the state, a state hospital or a sanatorium or against a physician, surgeon, dentist, podiatrist, chiropractor or other licensed health care provider employed by the state, the attorney or party filing the claim may submit a certificate of good faith to the Claims Commissioner in accordance with section 52-190a. If such a certificate is submitted, the Claims Commissioner shall authorize suit against the state on such claim." CT Page 2435 (Emphasis added.)
"In interpreting the language of a statute, the words must be given their plain and ordinary meaning and their natural and usual sense unless the context indicates that a different meaning was intended." (Internal quotation marks omitted.) Blumenthal v. Barnes, 261 Conn. 434, 460
n. 37, 802 A.2d 844 (2002). "We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, [and] to the legislative policy it was designed to implement . . ." (Internal quotation marks omitted.)Southern New England Telephone Co. v. Dept. of Public Utility Control,261 Conn. 1, 14, 803 A.2d 879 (2002). Furthermore, it is presumed "that the legislature intends sensible results from the statutes it enacts . . . Therefore, [the court reads] each statute in a manner that will not thwart its intended purpose or lead to absurd results." (Internal quotation marks omitted.) Garcia v. ITT Hartford Insurance Co.,72 Conn. App. 588, 592, 803 A.2d 879 (2002).
Number 98-76 of the 1998 Public Acts added to § 4-160 new subsection (b), authorizing the submission of a certificate of good faith in medical malpractice claims against the state and requiring the claims commissioner to authorize suit against the state if such a certificate is filed. Prior to the enactment of Public Act 98-76, the claims commissioner had the discretion to conduct discovery and hold hearings on the validity of medical malpractice claims against state doctors. With the passage of Public Act 98-76, however, the claims commissioner is to authorize suit against the state or health care providers employed by the state in medical malpractice claims that are accompanied by certificates of good faith. The legislative history of this revision to the statute makes clear that the purpose of Public Act 98-76 was to streamline the process of seeking authorization from the claims commissioner to bring malpractice claims against the state.
In the judiciary committee hearing on the bill (SB 213), testimony was given by individuals and their attorneys of their experience in waiting for their claims to be authorized by the claims commissioner. In some cases, claimants were waiting up to three years without a hearing being scheduled. Frustration with the statute as it existed had to do with the claims commissioner's wide discretion in conducting discovery and otherwise looking into the merits of the claim. "There are no deadlines, no time lines at all on the conduct of the claims commission. The claims commission can take as long as is necessary to make a determination CT Page 2436 whether or not they will authorize a lawsuit against the State of Connecticut." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1998 Sess., p. 144, remarks of Robert Reardon.
The requirement of a certificate of good faith upon the filing of a claim was understood to be a protection against the filing of frivolous claims. "The Certificate of Good Faith affords every protection appropriate for the State of Connecticut before a medical negligence case can be brought." Conn. Joint Standing Committee Hearings, supra, p. 139. Attorneys who file false certificates are subject to sanctions or a grievance. "If a lawyer or if a plaintiff files a false certificate of good faith in a case, they are exposed to be paying the defense costs, including a reasonable attorneys fee to the doctor that they've made the allegation against improperly." Conn. Joint Standing Committee Hearings,supra, p. 139. At the end of the hearing, Representative Lawlor summarized the purpose and intent of the proposed change to those present: "I think it's our obligation in the light of the reality of the sovereign immunity of the State and tribes and federal government, etc., that we have to make it as simple as possible to accomplish justice even when the sovereign is involved. So, I'm relatively optimistic this bill will be successful this year and hopefully that you won't and people like yourself in the future won't have to deal with this kind of thing." Conn. Joint Standing Committee Hearings, supra, p. 147. Thus, the purpose of the amendment was to unburden the claims commissioner and allow claims to proceed with submission of the certificate of good faith.
The choice of language employed in § 4-160 (b) is significant as well. The legislature chose to use the word "shall" rather than more discretionary language. However, "[i]n order to determine whether a statute's provisions are mandatory we have traditionally looked beyond the use of the word shall and examined the statute's essential purpose." (Internal quotation marks omitted.) United Illuminating Co. v. NewHaven, 240 Conn. 422, 465, 692 A.2d 742 (1997). "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) Martinez v. Dept. of Public Safety, 258 Conn. 680, 685,784 A.2d 347 (2001). The court finds that § 4-160 (b) imposes a substantive duty on the claims commissioner to authorize claims accompanied by a good faith certificate, changing the very function of CT Page 2437 the claims commissioner when receiving such claims. "The use of the word `shall,' therefore, relates to the essence of the statute itself and necessarily imposes a mandatory directive upon the state." Id.
The State of Connecticut, in its motion to dismiss, points to General Statutes § 52-102b (c), which provides in pertinent part: "No person who is immune from liability shall be made an apportionment defendant nor shall such person's liability be considered for apportionment purposes pursuant to section 52-572h." The State's argument is that this statutory language is clear and unambiguous and therefore restricts the ability of the claims commissioner to authorize suit in the case of an apportionment claim. When the claims commissioner authorizes suit against a physician employed by the state, however, the physician is not "immune from liability," but may be made a party to an action. Such a physician, therefore, can be made an apportionment defendant just as any private citizen can be made an apportionment defendant.[4] The State's argument is unpersuasive and in conflict with the clear language of § 4-160
(b) for the reasons stated above.
The apportionment defendant Maresh seeks a writ of mandamus ordering the claims commissioner to authorize suit against Shea. In his supporting memorandum of law, Maresh refers to his situation as being caught in a "Catch-22" where a complaint is required to make a state doctor a party for apportionment purposes and authorization from the claims commissioner is necessary in order to file a complaint, yet the claims commissioner refuses to authorize apportionment complaints. The court agrees. The claims commissioner's position with respect to medical malpractice claims seeking apportionment of liability is inconsistent with the requirements of the statute. The language of § 4-160 (b) is clear on its face: "Inany claim alleging malpractice against the state . . . or against a physician . . . employed by the state, the attorney or party filing the claim may submit a certificate of good faith to the Claims Commissioner in accordance with section 52-190a. If such a certificate is submitted, the Claims Commissioner shall authorize suit against the state on such claim." (Emphasis added.) The current posture of the claims commissioner places potential plaintiffs in a situation where they are without an adequate remedy while they wait, sometimes years, for a disposition from the claims commissioner. This is the situation that the legislature sought to avoid in enacting Public Act 98-76.
A writ of mandamus is warranted when an obligation to act is clear and there is a right to that performance. "It is designed to enforce a plain positive duty. The writ will issue only when the person against whom it is directed is under a clear legal obligation to perform the act compelled and the party seeking the writ has a clear legal right to the CT Page 2438 performance." (Internal quotation marks omitted.) Gelinas v. WestHartford, 225 Conn. 575, 586, 626 A.2d 259 (1993), on appeal after remand, 65 Conn. App. 265, 782 A.2d 679, cert. denied, 258 Conn. 926,783 A.2d 1028 (2001). "It is well established that mandamus will issue only if the plaintiff can establish: (1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to the performance of that duty; and (3) that the plaintiff has no adequate remedy at law." (Internal quotation marks omitted.) Stratford v. State Board of Mediation Arbitration, 239 Conn. 32, 44, 681 A.2d 281 (1996); see also Grassov. Zoning Board of Appeals, 69 Conn. App. 230, 249, 794 A.2d 1016
(2002).
The court finds that § 4-160 (b) mandates the claims commissioner to authorize suit in a malpractice claim against a state physician where a certificate of good faith has been submitted along with a notice of claim. It is clear from the legislative history of Public Act 98-76 and the language of § 4-160 (b) itself that the legislature intended to prevent the delay and uncertainty caused by the claims commissioner's investigation into each claim, which prevented timely adjudication of claims. It is the statutory duty of the claims commissioner to authorize suit against a state doctor upon the filing of such a certificate with a claim, and there is no provision for discretion on the part of the claims commissioner.
In the present case, the defendants/apportionment plaintiffs and Maresh have filed the required good faith certificates pursuant to § 4-160
(b). The plaintiffs have properly asserted a direct claim against the apportionment defendant Shea pursuant to subsection (d) of § 52-102b, which allows a plaintiff to "assert any claim against the apportionment defendant arising out of the transaction or occurrence that is the subject matter of the original complaint." As discussed above, § 4-160
(b) leaves the claims commissioner no discretion; he must authorize the medical malpractice claims against Shea. The claims commissioner's lack of action on these claims leaves the defendants/apportionment plaintiffs and Maresh with no adequate remedy at law. It is therefore ordered that the claims commissioner perform this duty and authorize the claims against Shea as required by § 4-160 (b).
 CONCLUSION
For the foregoing reasons, the writ of mandamus is granted and the motions to dismiss are denied.
BY THE COURT CT Page 2439
Hennessey, J.