## PURNENDU CHATTERJEE ET AL. *v.* COMMISSIONER OF REVENUE SERVICES

Superior Court, Tax Session, Judicial District of New Britain
File No. CV00-0500672S

Memorandum filed April 29, 2003

*Robinson & Cole,* for the plaintiffs.

*Paul M. Scimonelli*, assistant attorney general, with whom was *Richard Blumenthal*, attorney general, for the defendant.

HON. ARNOLD W. ARONSON, JUDGE TRIAL REFEREE. The key issue in the present tax appeal is whether the defendant commissioner of revenue services (commissioner), pursuant to General Statutes § 12-39s, may grant a refund to the plaintiffs, Purnendu Chatterjee and Amita Chatterjee, for capital gains, dividends and interest income taxes they claim were erroneously paid.

In August 1989, the plaintiffs purchased a "getaway home" for $881,000 that was used as a weekend residence in Greenwich. In 1987 and 1989, the plaintiffs purchased two apartments at 320 Central Park West in New York City. In 1989 and 1990, the plaintiffs spent approximately twenty-four and thirty-seven days, respectively, in Connecticut. The plaintiffs spent 280 days in New York City during 1989 and 210 days there during 1990.

The plaintiffs were born and raised in India and came to the United States in the 1970s to further their educations. The plaintiffs continued to work in the United States and spend much of their time in this country. The plaintiffs were married in India in 1985 and have kept their treasured possessions and family and business ties there. The plaintiffs own two homes and a farm in India, and maintain their primary home and domicile there.

In 1989 and 1990, the plaintiffs filed a federal tax return as "residents" of the United States. On the advice of their accountant, and because the plaintiffs had purchased a home in Connecticut, the plaintiffs also filed capital gains, dividends and interest income tax returns in Connecticut. The plaintiffs reported a tax due for 1989 of $95,787, and reported a tax due for 1990 of $162,005. Both taxes were paid by the plaintiffs. The plaintiffs also timely filed Connecticut form CT-1040,

Connecticut resident personal income tax returns for the 1991, 1992 and 1993 tax years.

In 1993, the New York state department of taxation and finance (department) audited the plaintiffs' 1989-1991 New York nonresident personal income tax returns and determined that the plaintiffs were domiciled in New York state during that period. In May 1998, the plaintiffs and the department entered into an agreement whereby it was agreed that the plaintiffs' domicile was changed to India after January 1, 1994. The plaintiffs paid the state of New York $2.4 million to settle their liabilities as possible New York domiciliaries for the 1989–1993 tax years.

On April 7, 1995, the plaintiffs filed protective claims for refund of the Connecticut capital gains, dividends and interest income taxes paid for the 1989 and 1990 tax years and for the Connecticut personal income taxes paid for the 1991, 1992 and 1993 tax years. On June 1, 1998, after the New York audit was completed, the plaintiffs filed final amended returns with Connecticut for the 1989–1993 tax years. In those final amended returns, the plaintiffs claimed that they were not domiciled in this state during this period of time because, pursuant to General Statutes § 12-505 (a),[1] they had spent less than 183 days per year in Connecticut in 1989–1993 and, therefore, they could not be taxed as residents for any of the tax years under review. The commissioner agreed with the plaintiffs and granted them a refund of taxes for the years 1991–1993. For the taxable years of 1989 and 1990, however, the commissioner, on October 27, 1999, issued the plaintiffs a notice of disallowance explaining that the 1989 and 1990

---

[1] General Statutes (Rev. to 1991) § 12-505 defines "resident " in pertinent part to mean "an individual . . . (2) who is not domiciled in this state but maintains a permanent place of abode in this state and is in this state for an aggregate of more than one hundred eighty-three days of the taxable year. . . ."

refund claims were being denied without any review of the merits of their claims because the plaintiffs' refund claims were filed beyond the three year statute of limitations for refund provided under General Statutes § 12-515.[2]

The plaintiffs requested that the commissioner reconsider his decision pursuant to the special refund authority granted to him under § 12-39s.[3] The commissioner reconsidered his decision, but refused to consider the merits because the claims were filed beyond the three year statute of limitations set forth in § 12-515.[4]

Section 12-515 provides in pertinent part: "Any taxpayer who feels that he has overpaid any taxes due under [chapter 224 entitled 'Dividends, Interest Income and Capital Gains Tax'] may file a claim for refund in writing with the commissioner within three years from the due date for which such overpayment was made stating the specific grounds upon which the claim is founded. . . . Failure to file a claim within the time prescribed in this section constitutes a waiver of any demand against the state on account of overpayment. . . ."

---

[2] On October 27, 1999, the commissioner issued a notice of proposed disallowance, denying the plaintiffs' refund claims for capital gains, dividends and interest income taxes paid in 1989 and 1990 as shown on their 1989 and 1990 final returns. The notice of proposed disallowance was based on the fact that the plaintiffs' protective refund claims and final returns for taxable years 1989 and 1990 were filed after the statute of limitations for refund under General Statutes § 12-515 had expired and, therefore, were not timely.

[3] On December 20, 1999, the plaintiffs timely requested a hearing before the appellate division of the department of revenue services to contest the notice of proposed disallowance. In that request for a hearing, the plaintiffs requested that the commissioner exercise his discretionary authority under General Statutes § 12-39s and grant the plaintiffs' 1989 and 1990 refund claims.

[4] On February 3, 2000, the commissioner informed the plaintiffs that he was unable to consider the appeal because the plaintiffs did not file their claims for refund within the three year period specified in General Statutes § 12-732. The commissioner's February 3, 2000 letter incorrectly referenced § 12-732.

The plaintiffs' capital gains, dividends and interest income tax returns for the taxable year 1989 were due October 15, 1990, because the plaintiffs had filed a timely extension request. The plaintiffs' capital gains, dividends and interest income tax returns for the taxable year 1990 were due October 15, 1991, also because the plaintiffs filed a timely extension request.

The plaintiffs' filing of a protective claim for a refund on April 7, 1995, for the taxable years 1989 and 1990 was beyond the three year statute of limitations recited in § 12-515. The plaintiffs in their posttrial brief claim that although § 12-515 provides that a taxpayer must file a claim for refund within three years of the due date for which the overpayment was made, § 12-39s overrides § 12-515 and permits the commissioner to exercise his discretion and to grant the plaintiffs' request for a refund because the plaintiffs were not domiciled in Connecticut in 1989 and 1990.

Section § 12-39s provides in relevant part: "Cancellation of unpaid portion of erroneously or illegally assessed taxes and credit or refund of erroneously or illegally collected taxes. (a) The Commissioner of Revenue Services, of his own motion, is authorized, where any tax, penalty or interest has been erroneously or illegally assessed against any person by said commissioner, to cancel the unpaid portion of such tax, penalty or interest. (b) The Commissioner of Revenue Services, of his own motion, is authorized, if the commissioner determines that any tax, penalty or interest has been paid more than once or has been erroneously or illegally collected or computed . . . to refund, upon order of the Comptroller, the balance, if any, to such person. . . . (c) The provisions of this section shall not be construed as authorizing suit against the state by a person against whom any tax, penalty or interest has been erroneously or illegally assessed or from whom any tax, penalty or interest has been erroneously or illegally

collected and shall not be construed as a waiver of sovereign immunity. . . ."[5] General Statutes § 12-39s.

The plaintiffs argue that the capital gains, dividends and interest income tax was based on domicile and, therefore, the plaintiffs' payment of the 1989 and 1990 taxes was a mistake because they were neither domiciled nor did they reside in Connecticut during that period of time. The plaintiffs now claim that the filings of the capital gains, dividends and interest income tax returns were erroneous, and, therefore, this court should compel the commissioner to allow relief under § 12-39s and grant the plaintiffs a refund of their taxes paid for 1989 and 1990.

The court is faced with a situation in which the commissioner claims that the plaintiff taxpayers waited too long to appeal from the action of the commissioner pursuant to § 12-515 and, therefore, he consequently cannot reach the plaintiffs' § 12-39s claim on the merits. As the plaintiffs acknowledge, the taxpayers' claims for a refund were neither filed within three years from October 15, 1990, for the 1989 tax year, nor within three years from October 15, 1991, for the 1990 tax year.

Although the present case, as a tax appeal, is a trial de novo by statute, the plaintiffs have asked the court to review the decision of the commissioner and determine whether the commissioner abused his discretion in not granting a refund to the plaintiffs, even though the statute of limitations had expired. See *Millward Brown, Inc.* v. *Commissioner of Revenue Services*, 73 Conn. App. 757, 763–64, 811 A.2d 717 (2002).

In *Millward Brown, Inc.*, the issue was whether the plaintiff waited too long to appeal to the Superior Court from the decision of the commissioner. In *Millward Brown, Inc.*, the court noted that "failure to comply

[5] Public Acts 1995, No. 95-4, effective April 13, 1995.

with the statutory requirements for tax appeal deprives a trial court of subject matter jurisdiction. This principle has regularly been applied to administrative appeals." Id., 763. Here, § 12-515 required the plaintiff taxpayers seeking a refund of taxes to file a claim for such a refund with the commissioner within three years of October 15, 1989, and October 15, 1990. This they failed to do. Section 12-515 also provides that the plaintiff taxpayers waived their demand for payment of a refund if they failed to file their claim within three years of October 15, 1989, and October 15, 1990. On this basis alone, the plaintiffs would have no recourse against the commissioner.

Independent of § 12-515, however, § 12-39s (b) provides that the commissioner *on his own motion* may order the comptroller to refund any tax, penalty or interest that has been erroneously or illegally collected. There is no statute of limitations provided in § 12-39s as appears in § 12-515. The only limitation in § 12-39s is in § 12-39s (c), which provides that if the commissioner does not, on his own motion, authorize a refund of erroneously or illegally paid taxes, the taxpayer cannot sue the state.

Section 12-515 is applicable to a "taxpayer who feels that he has overpaid any taxes due under this chapter [and] may file a claim for refund in writing with the commissioner within three years from the due date. . . ." General Statutes § 12-515. In contrast, § 12-39s applies "where any tax, penalty or interest has been erroneously or illegally assessed . . . ." General Statutes § 12-39s (a). These two statutes address different interests. In § 12-515, contained within chapter 224 of title 12 of the General Statutes, the interest is that of the taxpayer who has overpaid capital gains, dividends and interest income taxes and seeks a refund of the overpayment. Section 12-39s is contained within chapter 202 of title 12 of the General Statutes entitled: "Col-

lection of State Taxes," and was enacted as part of the statutory section concerning the abatement of taxes. Section 12-39s addresses the interest of fairness to a person who has erroneously or illegally paid a tax and, in fairness, should be reimbursed by the commissioner on his own motion. Under § 12-39s, if the commissioner discovers that the taxpayer has made an erroneous or illegal payment of taxes, the commissioner neither need not wait for the taxpayer to discover the error or file a claim for a refund, but may, on his own motion, order a refund to the taxpayer.

The issue in the present case is whether the commissioner was correct in denying the plaintiffs' claim solely because of his interpretation of the applicability of the statute of limitations posed in § 12-515 or whether the commissioner was authorized to consider a refund of taxes to the plaintiffs under § 12-39s without considering the restriction of the statute of limitations in § 12-515.

As with all issues of statutory construction, the analytical starting point in examining the applicability of § 12-515 and § 12-39s is the relevant statutory language. In following this principle, the court is guided by our Supreme Court's decision in *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003) (en banc), that "[t]he process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, [231 Conn. 418, 431, 650 A.2d 557 (1994)]. In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles

governing the same general subject matter." . . . [*Bender* v. *Bender*, 258 Conn. 733, 741, 785 A.2d 197 (2001)]." (Internal quotation marks omitted.) *State* v. *Courchesne*, supra, 577. "[T]he soul of the statute, and the search for this intent [is] the guiding star of the court." (Internal quotation marks omitted.) Id., 575.

With these principles in mind, the circumstances surrounding the enactment of § 12-39s and the legislative policy behind it will be examined next. As the plaintiffs point out, Gene Gavin, then acting commissioner of the department of revenue services, testified before the finance, revenue and bonding committee of the General Assembly to present the 1995 legislative proposals of the department of revenue services. Testifying about Senate Bill No. 821, which later became § 12-39s, the commissioner indicated his desire to be able to allow refunds to taxpayers who should not have paid a tax to the state, reciting: "This bill will create a uniform mechanism across all tax platforms to allow for fair treatment of taxpayers where a tax should not have been paid or is not owed." Conn. Joint Standing Committee Hearings, Finance, Revenue and Bonding, Pt. 1, 1995 Sess., p. 105. "[W]hat it is really doing is it is giving us a mechanism, under the law, that would help prevent the payment of taxes that really aren't owed." Id., p. 112. Similarly, Richard Nicholson, then general counsel to the department of revenue services, testified: "We felt that it was important to have this power to use in a situation where a taxpayer can come forward and prove to us that they don't owe the tax even though their administrative rights have gone by. . . . Id., 111. It "is really intended to get at the hard cases where somebody has truly missed a filing deadline, but it is clear that they don't owe the tax." Id., p. 112. Gavin's statement to the legislative committe that § 12-39s

would work across "all tax platforms to allow for fair treatment of taxpayers"; id., p. 105; shows an intent to give the commissioner the authority to resolve tax matters in the whole field of state taxation and not just in one area alone. When the clear language of § 12-39s is examined, one sees that the legislature carefully used the words that the commissioner was "authorized" on "his own motion" to take action. General Statutes § 12-39s. The court takes this to mean that the commissioner, of his own volition, without the need for the taxpayer to file a request for a refund, may, at any time, order a refund of an erroneous or illegal tax.

There appears to be nothing in the language of § 12-515 or § 12-39s that ties these two statutes together for the purpose of incorporating the three year statute of limitations of § 12-515 into that of § 12-39s. No such inference can be drawn. Gavin's statement to the legislative committee considering Senate Bill No. 821 expressed the intent of the legislature to allow the commissioner, on his own motion, to right a wrong. Because § 12-39s is a statute permitting the commissioner to act on his own motion, the statute of limitations contained in § 12-515 is inapplicable here.

The commissioner misinterpreted § 12-515 when he determined that although he could refund the plaintiffs' taxes for 1991, 1992 and 1993, he was prohibited from refunding taxes for 1989 and 1990 because of the statute of limitations in § 12-515.

The commissioner did not decide whether to refund the taxes to the plaintiffs paid for 1989 and 1990 on the merits, but, as indicated previously, on an erroneous interpretation of § 12-515 and § 12-39s. Both the plaintiffs and the commissioner filed posttrial briefs on the issue of whether the commissioner was correct in rejecting the plaintiffs' claim for reimbursement of taxes pursuant to § 12-39s. This court finds that the

commissioner incorrectly rejected the plaintiffs' claim for a refund of taxes paid for 1989 and 1990 solely on the ground that the statute of limitations in § 12-515 precluded him from granting the plaintiffs a refund under § 12-39s.

Although the plaintiffs argue that the present action is an appeal pursuant to General Statutes § 12-522, which allows a party to appeal from a decision of the commissioner of revenue services to the Superior Court as a trial de novo; *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 145, 527 A.2d 679 (1987); the court recognizes that the commissioner has not made a determination of the plaintiffs' claim on the merits of the present case. It would be inappropriate for this court to stand in the shoes of the commissioner and make a decision on the merits of the present case when the commissioner has not had an opportunity to address the merits because of a misinterpretation of § 12-39s. Section 12-39s grants this privilege only to the commissioner.

The present case, therefore, is remanded to the commissioner to consider the plaintiffs' claim pursuant to § 12-39s without considering the statute of limitations set forth in § 12-515. Because the commissioner's decision under § 12-39s (c) cannot be appealed, this remand is a final judgment. See *Doe* v. *Connecticut Bar Examining Committee*, 263 Conn. 39, 46, 818 A.2d 14 (2003).