## PURNENDU CHATTERJEE ET AL. *v.* COMMISSIONER OF REVENUE SERVICES
### (SC 17354)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.

---

Argued November 29, 2005—officially released April 11, 2006

*Timothy P. Noonan*, with whom were *Linda L. Morkan, John R. Shaughnessy, Jr.*, and, on the brief, *Paul R. Comeau*, for the appellants (plaintiffs).

*Philip Miller*, assistant attorney general, with whom were *Louis P. Bucari, Jr.*, and, on the brief, *Richard Blumenthal*, attorney general, and *Mark Kohler*, assistant attorney general, for the appellee (defendant).

*Opinion*

NORCOTT, J. The plaintiffs, Purnendu Chatterjee and Amita Chatterjee, appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant, the commissioner of revenue services,[1] denying their request for a tax refund pursuant to Gen-

[1] At the time of the initiation of the underlying proceedings, Gene Gavin was the commissioner of revenue services.

eral Statutes § 12-39s.[2] On appeal,[3] the plaintiffs claim that the trial court improperly concluded that it lacked jurisdiction to review the defendant's decision to deny the plaintiffs' request for a refund because, under § 12-39s (c), that determination is committed to the defendant's sole discretion after the expiration of the three year limitations period provided by General Statutes § 12-515.[4] The plaintiffs also claim that the trial court's construction of § 12-39s (c) violates the due process clause of the fourteenth amendment to the United States constitution.[5] We affirm the judgment of the trial court.

[2] General Statutes § 12-39s provides in relevant part: "(a) The Commissioner of Revenue Services, of his own motion, is authorized, where any tax, penalty or interest has been erroneously or illegally assessed against any person by said commissioner, to cancel the unpaid portion of such tax, penalty or interest.

"(b) The Commissioner of Revenue Services, of his own motion, is authorized, if the commissioner determines that any tax, penalty or interest has been paid more than once or has been erroneously or illegally collected or computed, to credit such amount against any amounts then due and payable from such person to said commissioner and to refund, upon order of the Comptroller, the balance, if any, to such person. If such person is required by law to collect such tax or reimbursement for such tax from another person and has collected such tax or reimbursement for such tax from such other person, any amount credited or refunded under this subsection shall be credited or refunded to such other person.

"(c) The provisions of this section shall not be construed as authorizing suit against the state by a person against whom any tax, penalty or interest has been erroneously or illegally assessed or from whom any tax, penalty or interest has been erroneously or illegally collected and shall not be construed as a waiver of sovereign immunity. . . ."

[3] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] General Statutes § 12-515 provides in relevant part: "Any taxpayer who feels that he has overpaid any taxes due under this chapter may file a claim for refund in writing with the commissioner within three years from the due date for which such overpayment was made stating the specific grounds upon which the claim is founded. . . . Failure to file a claim within the time prescribed in this section constitutes a waiver of any demand against the state on account of overpayment. . . ."

[5] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge

The record reveals the following facts and procedural history. The plaintiffs were born and raised in India and came to the United States to further their education. Although they own considerable property in India, the plaintiffs purchased an apartment located at 320 Central Park West in New York City in 1987. The plaintiffs purchased an additional apartment at the 320 Central Park West building in 1989, and also purchased a home in Greenwich that same year.

In 1989 and 1990, the plaintiffs filed capital gains, dividends and interest income tax returns in Connecticut, reporting taxes due of $95,787 and $162,005, respectively. The plaintiffs also filed Connecticut personal income tax returns for the years 1991 through 1993.[6] In 1993, the state of New York performed a personal income tax audit on the plaintiffs for the years 1989 through 1993. The plaintiffs subsequently paid the state of New York $2.4 million to settle their tax liabilities as New York residents.[7] They then filed amended Connecticut tax returns and claims for refunds of capital gains, dividends and interest income taxes paid from 1989 through 1993, contending that, pursuant to General Statutes § 12-505,[8] they were not Connecticut residents for that time period and, accordingly, were not subject to Connecticut taxation.

the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law . . . ."

[6] The state enacted a general personal income tax in 1991 applicable to taxable years commencing on or after January 1, 1991. See General Statutes § 12-700; Public Acts, Spec. Sess., June, 1991, No. 91-3, § 51.

[7] Although the plaintiffs contend that they mistakenly had filed Connecticut tax returns, the defendant argued in the trial court that the plaintiffs had intentionally filed the Connecticut returns in order to avoid the higher New York state taxation rate.

[8] General Statutes § 12-505 (a) (7) includes within the definition of a Connecticut " 'resident' . . . an individual . . . (B) who is not domiciled in this state but maintains a permanent place of abode in this state and is in this state for an aggregate of more than one hundred eighty-three days of the taxable year . . . ."

The defendant granted the plaintiffs a refund for taxes paid in the years 1991 through 1993, but declined to do so for the years 1989 and 1990, stating that the three year statute of limitations provided by § 12-515 precluded him from doing so. The plaintiffs subsequently requested a hearing before the appellate division of the department of revenue services, and also requested that the defendant exercise his discretionary authority pursuant to § 12-39s; see footnote 2 of this opinion; and grant their claims for refunds of the 1989 and 1990 taxes. The defendant denied both requests, again citing the three year statute of limitations.

The plaintiffs appealed from the defendant's decision to the trial court pursuant to General Statutes § 12-522.[9] Although the trial court found that the plaintiffs had filed their claims for a refund after the expiration of the statute of limitations, it nevertheless concluded that § 12-515 did not preclude the defendant[10] from exercising her discretion to refund the 1989 and 1990 taxes under § 12-39s. Accordingly, the trial court remanded the case to the defendant to consider the merits of the plaintiffs' claim for a refund under § 12-39s. The trial court "recognize[d] that the [defendant] has not made a determination of the plaintiffs' claim on the merits of this case," and concluded that, "it would be inappropriate for this court to stand in the shoes of the [defendant] and make a decision on the merits . . . ." The trial court further concluded that the decision of whether to grant a refund pursuant to § 12-39s rested solely

[9] General Statutes § 12-522 provides in relevant part: "Notwithstanding the provisions of chapter 54 to the contrary, any person aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services under the provisions of this chapter may, within one month after service upon such person of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court . . . ."

[10] Pamela Law succeeded Gene Gavin as commissioner of revenue services by this point in the proceedings.

with the defendant and stated: "Since the [defendant's] decision under § 12-39s (c) cannot be appealed, this remand is a final judgment." Neither party appealed from the trial court's remand order.

On remand, the defendant again declined to issue the plaintiffs a refund, concluding that the requested refund was not authorized by § 12-39s (b) because the taxes in question were not " 'erroneously or illegally collected or computed.' " The plaintiffs subsequently filed a motion for judgment in the trial court, claiming that the defendant had violated the trial court's prior order by not considering the merits of the plaintiffs' claim. In denying the plaintiffs' motion, the trial court stated that § 12-39s (c) precluded it from reviewing the defendant's decision on the merits. The trial court then rendered judgment dismissing the plaintiffs' appeal. This appeal followed.

On appeal, the plaintiffs claim that the trial court improperly: (1) refused to review the question of whether the defendant complied with its remand order; (2) concluded that § 12-39s (c) precluded it from reviewing the defendant's determination that the plaintiffs were not entitled to a refund under § 12-39s (b) because the taxes in question had not been "erroneously or illegally collected or computed"; and (3) interpreted § 12-39s (c) in a way that violates the constitutional guarantees of due process, equal protection and separation of powers. The defendant, in response, contends that the trial court correctly interpreted § 12-39s (c) as precluding judicial review of the defendant's decision, and also that such preclusion is constitutionally permissible. We first address the plaintiffs' second claim.[11]

_____

[11] The plaintiffs' first claim on appeal, namely, that the trial court improperly failed to consider whether the defendant complied with its remand order following the initial denial of a refund, lacks merit. The trial court, in its memorandum of decision following the plaintiffs' first appeal, had ordered the defendant to "*consider the plaintiffs' claim* pursuant to § 12-39s, without considering the statute of limitations in § 12-515." (Emphasis added.) Although the trial court did not state explicitly that the defendant

I

Because the present case involves an appeal from a decision of the defendant, "[a] brief overview of the statutory scheme that governs administrative appeals . . . is necessary to our resolution of this issue. There is no absolute right of appeal to the courts from a decision of an administrative agency. . . . Appeals to the courts from administrative [agencies] exist only under statutory authority . . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed. . . . In the absence of statutory authority, therefore, there is no right of appeal . . . ." (Internal quotation marks omitted.) *Nine State Street, LLC* v. *Planning & Zoning Commission*, 270 Conn. 42, 46, 850 A.2d 1032 (2004). This principle applies with equal force in tax appeals. *Millward Brown, Inc.* v. *Commissioner of Revenue Services*, 73 Conn. App. 757, 764, 811 A.2d 717 (2002) ("[f]or jurisdictional purposes . . . we can see no distinction between tax appeals and other statutory appeals").

Although a statutory scheme exists to provide refunds to taxpayers who have overpaid their capital

---

had complied with its previous order, it noted that the plaintiffs essentially had requested that it *reexamine* the defendant's decision not to grant a refund.

The plaintiffs, unhappy with the defendant's refusal to grant them a refund despite the trial court's holding that the statute of limitations did not preclude her from doing so, now seek review on the merits of the defendant's decision under the auspices of enforcing the trial court's original order. Significantly, the plaintiffs' arguments in support of this claim address the question of whether the defendant properly construed § 12-39s (b) in denying their refund request. For example, in their brief to this court, the plaintiffs argue that the defendant did not comply with the trial court's order because she failed to "properly interpret or apply [§ 12-39s]." Plainly, their arguments address the merits of the defendant's substantive decision not to issue a refund, not her compliance with the court's order to consider the plaintiffs' claim.

gains, dividends and interest income taxes,[12] it is undisputed that the plaintiffs seek to recover taxes paid beyond the three year statute of limitations provided by § 12-515. See footnote 4 of this opinion. The plaintiffs, therefore, seek to recover under § 12-39s, which permits the defendant to refund the improperly paid taxes despite the untimeliness of their request. Whether the defendant's decision to deny their request under § 12-39s is appealable is an issue of statutory construction.

"The issue before this court involves a question of statutory interpretation that . . . requires our plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Citation omitted; internal quotation marks omitted.) *Cogan v. Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 7, 882 A.2d 597 (2005). Moreover, in seeking to ascertain the meaning of a statute, we must consider General Statutes § 1-2z, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

Accordingly, we begin with the language of the applicable statutes. Section 12-522, the statute under which

---

[12] Normally, a taxpayer who believes that he has overpaid his dividends, capital gains and interest income taxes may file a written claim for a refund with the defendant under § 12-515. In the event of a denial by the defendant, the taxpayer may request a hearing before the defendant pursuant to General Statutes § 15-521. If the defendant denies the taxpayer's request, the taxpayer may appeal to the trial court. See General Statutes § 12-522.

the plaintiffs appealed, provides that "any person aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services *under the provisions of this chapter* may . . . take an appeal therefrom to the superior court for the judicial district of New Britain . . . ." (Emphasis added.) Contrary to the plaintiffs' contention, § 12-522 does not permit an appeal from the defendant's decision to deny a refund requested pursuant to § 12-39s. In fact, the application of § 12-522 is explicitly limited to denials made "under the provisions of [chapter 224 of title 12 of the General Statutes] . . . ." In contrast § 12-39s is contained in chapter 202 of title 12 of the General Statutes and is, therefore, beyond the ambit of § 12-522.

Moreover, § 12-39s (c), which provides that § 12-39s "shall not be construed as authorizing suit against the state by a person against whom any tax, penalty or interest has been erroneously or illegally assessed or from whom any tax, penalty or interest has been erroneously or illegally collected and shall not be construed as a waiver of sovereign immunity," expressly precludes judicial review of the defendant's decision. Notwithstanding the plaintiffs' contention to the contrary, the term "suit," as it is used in § 12-39s, includes the present appeal. "In the absence of a statutory definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." (Citation omitted; internal quotation marks omitted.) *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 336, 857 A.2d 348 (2004); General Statutes § 1-1 (a). The word "suit," which previously has not been defined in the context of § 12-39s by either the legislature or the courts, is commonly understood as "[a] court proceeding to recover a right or claim." American Heritage College Dictionary (4th Ed. 2002). Clearly, the plaintiffs' attempt to secure a

tax refund through this appeal falls within the definition of the word "suit," especially because tax appeals are tried de novo, without the deference that characterizes other administrative appeals. See, e.g., *Leonard* v. *Commissioner of Revenue Services*, 264 Conn. 286, 294, 823 A.2d 1184 (2003).

Additionally, it is axiomatic that we strictly construe legislative exceptions to the common-law doctrine of sovereign immunity. See *White* v. *Burns*, 213 Conn. 307, 312, 567 A.2d 1195 (1990). "Therefore, because the state has permitted itself to be sued in certain circumstances, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity." (Citations omitted.) Id.

The plaintiffs attempt to circumvent the explicit preservation of sovereign immunity contained in § 12-39s (c) by arguing that the legislature has waived sovereign immunity by enacting §§ 12-515 and 12-522. The plaintiffs overlook, however, the fact that the legislature explicitly provided a three year limitation on a taxpayer's remedies under those sections. "It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . Accordingly, care must be taken to effectuate all provisions of the statute. . . . Moreover, statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *State* v. *Gibbs*, 254 Conn. 578, 602, 758 A.2d 327 (2000). The plaintiffs' interpretation renders the second clause of § 12-39s (c) meaningless by permitting suit in the face of a clear mandate that § 12-39s does not vitiate sovereign immunity. See General Statutes § 12-39s (c). "When one construction thwarts the purpose of an enactment and

another does not, the latter construction, where possible, is preferred." *Bergner* v. *State*, 144 Conn. 282, 288, 130 A.2d 293 (1957).

Furthermore, § 12-39s (b) specifically provides that the defendant "*of h[er] own motion, is authorized,* if [she] determines that any tax, penalty or interest has been . . . erroneously or illegally collected or computed, to credit such amount against any amounts then due and payable from such person . . . and to refund, upon order of the Comptroller, the balance, if any, to such person." (Emphasis added.) As the statute's plain language indicates, it is permissive in nature and does not *require* the defendant to refund money to a taxpayer.

Finally, the legislative genealogy and history of § 12-39s indicate that our construction of the statute is consistent with its intended purpose. Section 12-39s was intended to serve as a legislative grace provision, allowing the defendant to grant a discretionary refund where one ordinarily would no longer be available. In fact, the statutes predating § 12-39s, namely, General Statutes (Rev. to 1993) §§ 12-425 (1)[13] and 12-549,[14]

[13] General Statutes (Rev. to 1993) § 12-425 (1) provides in relevant part: "If the commissioner determines that any amount, penalty or interest has been paid more than once or has been erroneously or illegally collected or computed, the commissioner *shall* certify to the state treasurer the amount collected in excess of the amount legally due and the person from whom it was collected or by whom paid. If approved by the treasurer, the excess amount collected or paid shall be credited on any amounts then due and payable from the person under this chapter, and the balance *shall* be refunded, upon order of the comptroller, to the person or his successors . . . ." (Emphasis added.)

[14] General Statutes (Rev. to 1993) § 12-549 provides: "If, within three years after the due date of any return, the commissioner determines that any amount, penalty or interest has been paid more than once or has been erroneously or illegally collected or computed, the commissioner *shall* credit the excess amount collected or paid against any amounts then due and payable from the person under this chapter, or any other act administered by the commissioner and the balance *shall* be refunded, upon order of the comptroller, to the person or his successors, administrators or executors." (Emphasis added.)

clearly *mandated* that the defendant refund improperly paid sales and use and admissions, cabaret and dues taxes, whereas § 12-39s merely *permits* the granting of refunds. "When the legislature amends the language of a statute, it is presumed that it intended to change the meaning of the statute and to accomplish some purpose." *State* v. *Johnson*, 227 Conn. 534, 543, 630 A.2d 1059 (1993).

Furthermore, there is nothing in the legislative debates to suggest that § 12-39s required the repayment of improperly paid taxes. Rather, the remarks of Gene Gavin, former commissioner of revenue services, before the Joint Standing Committee on Finance, Revenue and Bonding, indicate that § 12-39s was characterized as a permissive statute granting the defendant the *ability* to refund taxes that were incorrectly paid. See, e.g., Conn. Joint Standing Committee Hearings, Finance, Revenue and Bonding, Pt. 1, 1995 Sess., p. 105, remarks of Commissioner Gavin ("Another one of our proposals is [this bill, which] insures that the [c]ommissioner *can* redress any problems that may arise when taxes have been illegally or erroneously assessed or credited. . . . This will be especially important [when], for example, an income tax liability is assessed, but the taxpayer does not protest within the [sixty] day statutory period. Even though the taxpayer presents proof that he has no tax liability, under current law, the [d]epartment of [r]evenue [s]ervices cannot cancel the assessment. This bill will afford us the *ability* to cancel the assessment . . . ." [Emphasis added.]).

Accordingly, the trial court properly concluded that refunds under § 12-39s are committed to the defendant's sole discretion, and that it was, therefore, without jurisdiction to evaluate the merits of the plaintiffs' claim for a refund under § 12-39s (b).

## II

We now turn to the plaintiffs' claim that the trial court's interpretation of § 12-39s (c) as precluding judicial review of the defendant's decision raises several constitutional issues. Specifically, the plaintiffs aver that the prohibition of judicial review mandated by § 12-39s (c) violates: (1) the equal protection clauses of the federal and state constitutions; (2) the separation of powers clause of the state constitution; and (3) the due process clauses of the federal and state constitutions.

As a preliminary matter, we note that only one of the previously mentioned constitutional issues was raised before the trial court, namely, whether § 12-39s (c) violates the federal constitutional due process clause. Additionally, the plaintiffs do not seek review of their other federal claims in this court under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[15] and did not, before either this court or the trial court, provide independent analysis of their state constitutional claims. See *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004) ("'[w]e have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the [claimant] has provided an independent analysis under the particular provisions of the state constitution at issue' "). Accordingly, we confine our review to the plaintiffs' federal due process claim.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the [d]ue [p]rocess [c]lause of the . . . [f]ourteenth [a]mendment." *Mathews* v. *Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). We have previously stated that "[o]ur due process inquiry takes the form

---

[15] The test set forth in *Golding* applies in civil as well as criminal cases. See *Shawmut Mortgage Co.* v. *Wheat*, 245 Conn. 744, 755 n.9, 717 A.2d 664 (1998).

of a two part analysis. [W]e must determine whether [the plaintiff] was deprived of a protected interest, and, if so, what process was . . . due." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 499, 778 A.2d 33 (2001). "To have a property interest . . . a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (Internal quotation marks omitted.) Id. It is well established that the assessment and collection of taxes constitutes a deprivation of property that requires the state to provide appropriate procedural safeguards. See, e.g., *McKesson Corp.* v. *Florida Alcohol & Tobacco Division*, 496 U.S. 18, 36, 110 S. Ct. 2238, 110 L. Ed. 2d 17 (1990).

"To protect government's exceedingly strong interest in financial stability in this context, [the United States Supreme Court has] long held that a [s]tate may employ various financial sanctions and summary remedies . . . in order to encourage taxpayers to make timely payments prior to resolution of any dispute over the validity of the tax assessment." Id., 37. Additionally, "[s]tates may avail themselves of a variety of procedural protections against any disruptive effects of a tax scheme's invalidation, such as providing by statute that refunds will be available to only those taxpayers paying under protest, or enforcing relatively short statutes of limitation applicable to refund actions." Id., 50. Indeed, such procedural devices secure the state's ability to engage in stable financial planning. Id.

Clearly, the state has provided a meaningful and comprehensive administrative process for refund claims made within the applicable statute of limitations, including judicial review of denials. See General Statutes § 12-515 et seq. The plaintiffs cannot, therefore, seriously contend that the state was *obliged* to enact § 12-39s to provide relief for taxpayers whose claims

have lapsed. The plaintiffs' failure timely to invoke the normal administrative remedy process does not render unconstitutional an otherwise proper administrative scheme. The three year statute of limitations balances the state's important interest in financial stability with the plaintiffs' interest in recouping their allegedly improper payment of taxes. Section 12-39s is, therefore, a matter of legislative grace that does not give rise to a constitutionally protected property interest. Thus, we agree with the defendant's conclusion that "when the three year statute of limitations period contained in [§ 12-515] expired, so too did the plaintiffs' protected property interest in the taxes that were the subject of their claims."

The judgment is affirmed.

In this opinion the other justices concurred.