******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ESPINOSA, J., dissenting. I respectfully disagree with the majority's conclusion that the complaint filed by the plaintiffs, David Giannoni and Michelle Giannoni, on behalf of their minor son Nicholas, and the evidence in the present case support a cause of action under the state highway defect statute, General Statutes § 13a-144, sufficient to overcome the claim of the defendant, the Commissioner of Transportation, that the action was precluded by the doctrine of sovereign immunity. To the contrary, I conclude that the pleadings and the evidence in the present case demonstrate that the plaintiffs cannot support a cause of action due to the fact that Nicholas (1) was not a traveler on Route 113, a state highway, when he rode his bicycle into a culvert, and (2) the culvert itself is not a highway defect, as the defendant did not reasonably expect or encourage travelers to enter the culvert. By allowing the plaintiffs' insufficient claim to proceed, the majority—bypassing the well settled requirement that waivers of sovereign immunity should be strictly construed in favor of the state—expands the parameters of liability under § 13a-144 beyond its current borders. This will have the likely effect of inviting a plethora of highway defect claims brought by plaintiffs whose injuries have only dubious connections to actual state highway defects. Such a result properly serves neither the principles of judicial economy nor those plaintiffs who have suffered legitimate injuries due to actual highway defects and is inconsistent with our prior constructions of the highway defect statute. For these reasons, I would reverse the judgment of the trial court, and, therefore, I respectfully dissent.

It is well established that the state "cannot be sued without its consent . . . ." (Internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 313, 828 A.2d 549 (2003); see *Baker* v. *Ives*, 162 Conn. 295, 298, 294 A.2d 290 (1972). Section 13a-144 serves as a legislative waiver of the state's sovereign immunity from suit in cases where an individual is injured due to a defect on a state highway. *Kozlowski* v. *Commissioner of Transportation*, 274 Conn. 497, 501, 876 A.2d 1148 (2005); General Statutes § 13a-144. Because § 13a-144 is a "legislative exception to the common law doctrine of sovereign immunity," the statute should "be strictly construed in favor of the state." (Internal quotation marks omitted.) *Stotler* v. *Dept. of Transportation*, 313 Conn. 158, 166, 96 A.3d 527 (2014); *White* v. *Burns*, 213 Conn. 307, 312–13, 567 A.2d 1195 (1990). As the statute provides for an express waiver of the state's sovereign immunity, plaintiffs have the burden of alleging a claim "falling within the scope of that waiver." (Internal quotation marks omitted.) *Stotler* v. *Dept. of Transportation*, supra, 165. Accordingly, in the context of the

present case, the plaintiffs' failure to demonstrate a cause of action under § 13a-144 would leave the plaintiffs with no recourse at common law due to the state's extant sovereign immunity. *Baker* v. *Ives*, supra, 298. Thus, the decision on the defendant's motion to dismiss serves as a litmus test to whether the plaintiffs' journey down the path of litigation may proceed. The majority has decided that the plaintiffs' claim may continue on its way. I, however, would argue that the trial court properly should have stopped it in its tracks.

## I

As the statement of facts and procedural history presented in the majority opinion are accurate, I will only introduce additional facts from the record as necessary. I would first consider whether Nicholas was a traveler on Route 113 within the meaning of § 13a-144 when he rode his bicycle off Route 113 and onto the nearby municipal sidewalk, a private driveway, and a private lawn. In the majority's view, Nicholas was still a traveler on Route 113 when he moved onto the abutting sidewalk and private property because his travel thereon was "incidental to" and "for a purpose connected with" his previous travel on Route 113. In my view, Nicholas ceased to be a traveler on Route 113 when he voluntarily elected to maneuver his bicycle off of that highway. Thus, the trial court improperly denied the motion to dismiss on this ground because the record in this case cannot support a finding that Nicholas retained his status as a traveler when he willingly ceased to travel on Route 113.

This court has long recognized that in order to claim the protections of § 13a-144, a plaintiff "must be on the highway for some legitimate purpose connected with travel thereon . . . ." *Hay* v. *Hill*, 137 Conn. 285, 289–90, 76 A.2d 924 (1950). A plaintiff's status as a traveler, however, is not confined to the physical parameters of the roadway itself if a traveler's departure from the established roadbed is " 'incidental' " to travel on the state highway. *Ferreira* v. *Pringle*, 255 Conn. 330, 344, 766 A.2d 400 (2001); *Hay* v. *Hill*, supra, 289–90. Accordingly, the relevant question for this court is whether a traveler's departure from the established roadway was incidental to his travel upon the road itself. A person loses his status as a traveler when he "voluntarily depart[s] from the traveled way, and turn[s] aside from his journey for a purpose in no way connected with his passage over the highway." *O'Neil* v. *New Haven*, 80 Conn. 154, 156, 67 A. 487 (1907). In such instances, even if a person departs the state highway with the intention to eventually resume his travels upon the highway, he does not retain his status as a traveler merely because he plans to later reenter the highway at some indefinite future point. Id., 156–57.

I agree with the majority that when Nicholas was riding his bicycle along the paved shoulder of Route

113 he was a traveler. Where the majority and I differ is on the question of whether Nicholas remained a traveler within the ambit of § 13a-144 when he decided to leave Route 113 due to an influx of oncoming vehicular traffic and the bright glare of the oncoming vehicles' head-lights. The majority concludes that the incoming traffic presented an "exigency" that required Nicholas to leave the highway itself in order to continue his travels. I disagree and would conclude that the record clearly demonstrates that Nicholas voluntarily left Route 113 due to the heavy traffic, but then continued his journey on the sidewalk and ceased to be a traveler on the state highway. I also disagree that a traveler may claim the protections of § 13a-144 when the exigency at issue is self-created, such as Nicholas' decision to ride his bicy-cle on the improper side of Route 113 and thereby directly face the glare of the headlights that convinced him to depart the highway itself. Under this court's holding in *O'Neil*, when Nicholas left Route 113 for another purpose, he ceased, as matter of law, to be a traveler on the state highway. *O'Neil* v. *New Haven*, supra, 80 Conn. 156–57.

The complaint and the evidence demonstrate that Nicholas left the paved shoulder of Route 113 and steered his bicycle onto the adjacent sidewalk in order to avoid oncoming traffic. When Nicholas pulled his bicycle off of Route 113, he did not pause to wait for traffic to die down in order to continue his journey unimpeded by the oncoming vehicles. Rather, he contin-ued cycling along the municipal sidewalk for approxi-mately forty yards. When the sidewalk ended, he did not return to the shoulder of Route 113. Rather, he continued to ride over a private driveway and lawn before ultimately falling into the culvert. The majority suggests that the trial court's denial of the motion to dismiss must be upheld because nothing in the record conclusively establishes Nicholas' intended path once he departed Route 113. See footnote 12 of the majority opinion. But Nicholas' exact trajectory upon departing Route 113 is ultimately irrelevant. What *is* relevant is that Nicholas deemed Route 113 too dangerous to con-tinue riding along and exited the roadway and began to ride his bicycle on the sidewalk instead. This is a distinct purpose unrelated to travel on a state highway and, therefore, under our holding in *O'Neil*, deprives Nicholas of his status as a traveler within the purview of § 13a-144.[1]

In support of the notion that Nicholas' passage over the sidewalk, driveway, and private lawn were inciden-tal to his passage over Route 113, the majority opinion relies on several previous decisions of this court in which we determined that a plaintiff who left the state highway and was subsequently injured in an adjacent area retained his or her status as a traveler. All of the cited cases, however, are distinguishable from the pre-sent case on the ground that in those cases the plaintiffs

exited the highway for an ancillary purpose to their journey along the state highway, whereas in the present case Nicholas left Route 113 and instead began to ride his bicycle on the municipal sidewalk. See *Serrano* v. *Burns*, 248 Conn. 419, 422, 429, 727 A.2d 1276 (1999) (plaintiff slipped on ice after she exited vehicle that had been driven off of state highway to use public highway rest stop); *Hay* v. *Hill*, supra, 137 Conn. 286–87 (plaintiff was passenger who exited vehicle that stopped on side of state highway; she fell into culvert when she entered abutting grassy area to locate spot to relieve herself); *Griffith* v. *Berlin*, 130 Conn. 84, 87, 32 A.2d 56 (1943) (inverted factual scenario where plaintiff traveled on sidewalk and was injured when she departed sidewalk and entered and fell upon shoulder of highway). In those cases, the "exigencies of travel" required the plaintiffs, for one reason or another, to enter an area adjacent to the physical roadway itself. Furthermore, in none of those cases did the exigency arise due to the plaintiff's own decision to travel in a manner contrary to established highway rules and regulations. See General Statutes § 14-286b (a) ("[e]very person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable"). In the present case, when faced with his own self-created exigency of travel, Nicholas simply stopped traveling on Route 113. In doing so, he forfeited his status as a traveler on a state highway as a matter of law. See *O'Neil* v. *New Haven*, supra, 80 Conn. 156–57.

Additionally, at the time Nicholas rode his bicycle into the culvert, he was properly a traveler on the sidewalk and not on Route 113. Contrary to the conclusions of the majority opinion, I would agree with the defendant's argument that Nicholas' fall into the culvert was incidental to his travel on the municipal sidewalk and not Route 113. Section 13a-144 only subjects the Commissioner of Transportation to liability for injuries arising from defects on highways and sidewalks that the state has a duty to maintain. *Tuckel* v. *Argraves*, 148 Conn. 355, 358, 170 A.2d 895 (1961). In the present case, the sidewalk along the side of Route 113 was maintained by the town of Stratford, not the defendant. See *Moleske* v. *MacDonald*, 109 Conn. 336, 341, 146 A. 820 (1929) ("[sidewalks] serve local convenience almost wholly and have no relation to, nor do they contribute to, the facilitating of that public travel [that] the [s]tate aims to serve by the establishment of state aid and trunk line roads between the towns and across the [s]tate").

In some ways, the present case is analogous to *Tuckel* v. *Argraves*, supra, 148 Conn. 356–57, in which the plaintiff was walking on a sidewalk maintained by the town of East Hartford that abutted a state road when a road sign maintained by the state fell on the plaintiff, thereby injuring him. In upholding the trial court's judgment in favor of the defendant, this court noted that the plaintiff's claim essentially sought to extend the state's liabil-

ity to encompass travelers on municipal sidewalks who are injured by conditions not on the sidewalk itself, but the adjoining state highway. Id., 360. Determining that the defendant was in no way responsible for the maintenance of the sidewalk, this court rejected the plaintiff's claim. Id.

The plaintiffs' claim in the present case carries with it some of the same implications as the claim we addressed in *Tuckel*. As previously mentioned, the record demonstrates that Nicholas had begun riding his bicycle on the shoulder of Route 113 *against* traffic. Given the amount of traffic on Route 113 at that point, Nicholas and his companions left the shoulder of Route 113 and began to travel instead on the municipal sidewalk because "it would be safer for [them] to go on the sidewalk." Once the sidewalk ended, Nicholas continued to ride his bicycle over a private driveway and lawn before falling into the culvert. Nicholas' ensuing injuries were, therefore, a byproduct of his travel along the sidewalk, *not* of his prior travel along Route 113.[2] By recognizing the plaintiffs' scenario as actionable under § 13a-144, the majority runs the risk of broadening the current dimensions of liability under the statute and welcoming innumerable highway defect claims brought by persons who were injured not on state roads, but on the municipal sidewalks that often flank them. As previously stated in this dissenting opinion, it is the long-standing principle of this court that when addressing questions involving statutory waivers of sovereign immunity, such waivers should be read narrowly so that the state's sovereign immunity is not unduly eroded and ultimately diminished. See *Stotler* v. *Dept. of Transportation*, supra, 313 Conn. 166; *Chatterjee* v. *Commissioner of Revenue Services*, 277 Conn. 681, 691, 894 A.2d 919 (2006); *Babes* v. *Bennett*, 247 Conn. 256, 262, 721 A.2d 511 (1998); *White* v. *Burns*, supra, 213 Conn. 312–13.

The majority posits that by concluding as such, I have given insufficient consideration to the established principle that when reviewing a motion to dismiss, we must consider the allegations contained in the pleadings in a light most favorable to the plaintiffs. I agree with the majority that when reviewing a motion to dismiss we generally construe the pleadings favorably on behalf of the plaintiff. See *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 501. In the present case, however, we are faced with a motion to dismiss on the basis of sovereign immunity and must therefore also employ the countervailing principle that statutory waivers of sovereign immunity are to be construed narrowly in favor of the state. See *Stotler* v. *Dept. of Transportation*, supra, 313 Conn. 166. Indeed, this court's decision in *Stotler* is helpful in exploring the intersection between these two principles. In *Stotler*, the plaintiff brought a highway defect claim based on the allegedly defective design of Route 44 across Avon

Mountain. Id., 159–60. The defendant moved to dismiss the plaintiff's action on the basis that her claim was barred by the doctrine of sovereign immunity. Id., 160. This court, while acknowledging that pleadings are to be read in a light favorable to the plaintiff; id., 166; upheld the Appellate Court's decision in favor of the defendant on the grounds that recognizing the plaintiff's alleged highway defect as actionable would "eviscerate" the state's sovereign immunity and greatly increase the scope of its liability. Id., 184. In my view, the majority's approach in the present case achieves the result we avoided in *Stotler* by expanding the purview of the state's liability under § 13a-144 and diluting the state's sovereign immunity. For the foregoing reasons, I would conclude that the trial court improperly denied the defendant's motion to dismiss on the basis that Nicholas was a traveler on a state highway at the time of his injuries.

## II

I next address the issue of whether the culvert itself was a highway defect within the ambit of § 13a-144. I disagree with the majority that the record in the present case could support a finding that the culvert was such a defect because the defendant reasonably should have expected cyclists and pedestrians to travel in the culvert and its surrounding area. Our case law and the record in the present case mandate the conclusion that the culvert, as a matter of law, is not a highway defect because the defendant did not invite or encourage the public to enter the culvert nor should the defendant have reasonably expected the public to enter the culvert, given its location. I would, therefore, conclude that the trial court improperly denied the defendant's motion to dismiss on this ground.

This court has long defined a highway defect as "[a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . . ." (Internal quotation marks omitted.) *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 502–503; *McIntosh* v. *Sullivan*, 274 Conn. 262, 268–69, 875 A.2d 459 (2005). Highway defects are not limited to the road itself but may include "objects which have no necessary [connection] with the [roadbed], or the public travel thereon, and which may expose a person to danger, not as a traveler, but independent of the highway . . . ." (Internal quotation marks omitted.) *Kozlowski* v. *Commissioner of Transportation*, supra, 503; *Hewison* v. *New Haven*, 34 Conn. 136, 143 (1867). A defect located outside of the parameters of the highway, however, "must be so direct a menace to travel over the way and so susceptible to protection and remedial measures which could be reasonably applied within the way that the failure to

employ such measures would be regarded as a lack of reasonable repair." *Comba* v. *Ridgefield*, 177 Conn. 268, 271, 413 A.2d 859 (1979).

A highway defect not located in the roadway itself must be located in an area that "the state either invites or reasonably should expect the public to use . . . that is not directly in the roadway but that is a necessary incident to travel on the roadway . . . ." *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 504. An "important consideration," therefore, in this court's analysis is whether the public is "likely, and in fact encouraged" by the state to use the area incidental to travel along the state highway. (Internal quotation marks omitted.) Id., 505; *Baker* v. *Ives*, supra, 162 Conn. 302. Accordingly, "defective conditions located near the roadway, but in areas unintended for travel, are not highway defects within the ambit of the highway defect statute." *Kozlowski* v. *Commissioner of Transportation*, supra, 504.

Our previous decisions in this area, many of which the majority itself relies upon, clearly demonstrate those off-highway defects that are within the scope of liability under § 13a-144 and those that are not. The most instructive case in this regard is *Kozlowski*, in which the alleged highway defect was markedly similar to that alleged in the present case. Id., 504. In *Kozlowski*, the plaintiff, a construction worker performing highway repairs, was injured when he stepped on a defective catch basin cover and plummeted into the depths of the catch basin itself. Id., 499. The catch basin was located in a grassy area adjacent to the roadway and was indicated on the road itself by wooden posts placed to prevent motorists from driving their vehicles over the basin. Id., 504. The presence of the basin was obscured by "heavy shrubbery." Id. This court determined, as a matter of law, that given the catch basin's location and features, the public was "neither invited nor expected to traverse the catch basin area." Id., 505. Yet, despite the pronounced similarities between the overgrown catch basin in *Kozlowski* and the overgrown culvert in the present case, the majority determines that the culvert could be construed as an area the public was expected to enter.

This court's other decisions addressing this question bolster my conclusion that the defendant reasonably should not have expected the public to enter the culvert during their travels. In *Chazen* v. *New Britain*, 148 Conn. 349, 351, 170 A.2d 891 (1961), the plaintiff was injured when, after parking his automobile in a designated parking space, he entered an overgrown grassy embankment to reach a nearby public park, rather than continue along the paved public street as his passengers did. Upon entering the embankment, the plaintiff sustained injuries when he stepped onto a drainage ditch that was hidden by overgrown weeds and grass. Id.,

351–52. We concluded that the drainage ditch did not constitute a defect because the embankment was not intended for public travel and that the plaintiff departed the "traveled way" that *was* intended for travelers in that area. Id., 354. As both *Kozlowski* and *Chazen* demonstrate, areas similar to the culvert in the present case are not intended for public travel and the defendant would not reasonably expect travelers to enter such areas.

The majority relies on this court's decision in *Hay* v. *Hill*, supra, 137 Conn. 286–91, to support its conclusion that the culvert in the present case could be a highway defect. Indeed, the defect in *Hay* bears some similarity to the one alleged in the present case. In *Hay*, the plaintiff was injured when she fell into an open, unguarded culvert located between eight and twelve feet from the shoulder of the road and covered by shrubbery. Id., 287–88. Our decision in *Hay*, however, is distinguishable from the present case in several key aspects. First, of critical bearing on our decision in *Hay* is that the culvert into which the plaintiff fell was unmarked, despite the state's practice at that time of placing posts on the road side of culverts to demarcate their existence. Id., 287. There were numerous other culverts in the vicinity where the plaintiff sustained her injuries, and every other culvert but one was marked in such a fashion. Id. In the present case, the culvert's presence was indicated by three wooden posts on the road. Second, the procedural posture of the appeal in *Hay* differs from the present case. In *Hay*, the jury had returned a verdict against the defendant, and this court simply concluded that the jury reasonably could have concluded that "in view of the actual practice of the defendant, that he should have corrected the defect . . . ." Id., 289. Conversely, in the present case we are faced with an interlocutory appeal from the trial court's decision on a motion to dismiss that raised a claim of sovereign immunity. See *Miller* v. *Egan*, supra, 265 Conn. 303 n.2. Third, given the procedural context of *Hay*, that case did not involve—nor did this court address—the threshold question of sovereign immunity that exists in the present case. The majority discounts the significance of the procedural differences between *Hay* and the present case by suggesting that the ultimate issue in each case is the same. The vantage points, however, from which this court analyzed the facts in *Hay* and the facts in the present case are different. In *Hay*, this court viewed the facts from the point of determining whether a jury verdict was reasonably supported by the evidence, whereas in the present case, we view them to determine whether the plaintiff has overcome the state's inherent sovereign immunity.

Only those off-road areas that the state invites the public to enter and use may give rise to a highway defect under our case law. In *Baker* v. *Ives*, supra, 162 Conn. 301–302, we determined that the plaintiff had a

cognizable claim when she parked in a public parking area and was injured while crossing a dirt and grassy area covered in ice and snow that separated the public parking area from the nearby sidewalk. Central to our determination in *Baker* was the fact that the public was encouraged and reasonably expected to use the area in which the plaintiff was injured. Id. This same vein of reasoning runs through our other decisions in which we have determined that a condition outside the actual highway amounted to a highway defect actionable under § 13a-144 or a road defect actionable under General Statutes § 13a-149. See *Ferreira* v. *Pringle*, supra, 255 Conn. 332, 352 (action for injuries sustained due to severed signpost stub located in grassy strip along edge of highway where plaintiff and other bus passengers were encouraged to disembark should have been brought under § 13a-149 for road defect); *Serrano* v. *Burns*, supra, 248 Conn. 422 (plaintiff injured in parking lot of public rest stop located along state highway); see generally *Alston* v. *New Haven*, 134 Conn. 686, 689, 60 A.2d 502 (1948) (source of plaintiff's injuries was hole in public sidewalk that public was expected to use when crossing street); *Novicki* v. *New Haven*, 47 Conn. App. 734, 740, 709 A.2d 2 (1998) ("reasonably anticipated" that plaintiff and public would use walkway on public property leading to public school building).

The facts of the present case amply demonstrate that the defendant did not encourage the public to utilize the culvert area nor would the defendant have expected the public to do so in the course of their travels along Route 113. The culvert at issue was located approximately nine feet from the paved portion of Route 113.[3] Three wooden posts mark the presence of the culvert from Route 113, similar to the catch basin in *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 504, presumably so that motorists do not drive their vehicles off the road and into the culvert. Indeed, the record demonstrates that there was room on Route 113 and its shoulder for motorists, bicyclists, or pedestrians to pass safely by the culvert while remaining on Route 113. The area surrounding the culvert off of Route 113 further demonstrates that the defendant in no way encouraged use of this area. In fact, the culvert was itself buttressed by private property. Thus, for the public to access the culvert, individuals would be required to traverse property, which by its very nature, is not open for public use or travel. This is evident in that the municipal sidewalk on which Nicholas was riding *ended* once it reached the private driveway and lawn and *did not continue thereafter*. The present case is therefore analogous to *Chazen* v. *New Britain*, supra, 148 Conn. 354, where the drainage ditch on which the plaintiff fell was located off the road and therefore was not in an area where the public was invited or expected to travel.

In sum, I believe that our prior decisions in *Kozlowski* and *Chazen* provide clear guidance on the present issue.

In those cases, the alleged highway defects were substantially similar to that in the present case, and this court determined that as a matter of law those conditions were not actionable highway defects for the purposes of § 13a-144 or what is now § 13a-149. In my view, nothing in the present case would lead to a conclusion any different from those that this court reached in *Kozlowski* and *Chazen*. The culvert was not in an area that the defendant invited or encouraged the public to use. To reach the culvert, Nicholas voluntarily departed both Route 113 and the nearby sidewalk, places where the defendant *would* expect the public to travel, and entered a private driveway and lawn. "Since it is not intended that there shall be travel on such areas, travelers who leave the way provided for them and attempt to cross such areas may not assume that the areas are free from danger or unusual conditions, as travelers may do in the use of the traveled way." *Chazen* v. *New Britain*, supra, 148 Conn. 354.

Accordingly, I would conclude that, because the plaintiffs failed to demonstrate that the culvert was a highway defect within the ambit of § 13a-144, the trial court improperly denied the defendant's motion to dismiss. The majority opinion reaches the opposite conclusion on both this point and the question of whether Nicholas was a traveler at the time of his injury. I therefore respectfully dissent.

[1] The majority speculatively suggests that once the sidewalk ended, Nicholas' continued route across the driveway and lawn may have been an "inadvertent mistake . . . ." See footnote 25 of the majority opinion. Regardless of whether Nicholas' route was accidental or not, the fact remains that at that point in time, Nicholas had already voluntarily left Route 113 and ceased to be a traveler thereon as a matter of law. The majority's rationale, which allows the injuries that Nicholas sustained after perhaps mistakenly riding off of a municipal sidewalk to be linked back to his previous travel upon a state highway, will result in a temporal and geographic expansion of the state's liability. It is true that in the present case Nicholas' injuries occurred in a location relatively close to Route 113 and soon after his departure from the highway. The majority's reasoning, however, would be readily applicable to the claims of plaintiffs whose departure from a state highway had occurred much earlier before they were injured and at a location much further from the state highway. Such a result will invite highway defect claims in which the actual connection to a state highway is even more tangential than in the present case.

[2] Individuals who are injured while traveling on municipal sidewalks or roads are not without recourse under the laws of the state. General Statutes § 13a-149 authorizes individuals to bring defective road claims, substantially similar to those authorized by § 13a-144, against municipalities.

[3] The parties do not dispute that the culvert was located within the state right-of-way. As the majority correctly notes, however, whether a plaintiff's alleged injury occurred within the confines of the state right-of-way is merely a threshold inquiry as to whether § 13a-144 applies at all. See footnote 20 of majority opinion.